Max I. BITTNER, Plaintiff-Appellant,

v.

SADOFF & RUDOY INDUSTRIES, Defendant-Appellee.

Nos. 83–1130, 83–2299.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 17, 1983.

Decided Feb. 7, 1984.

As Amended March 9, 1984.

David J. Hase, Foley & Lardner, Milwaukee, Wis., for plaintiff-appellant.

Edward A. Dudek, Frisch, Dudek & Slattery, Milwaukee, Wis., for defendant-appellee.

Before WOOD and POSNER, Circuit Judges, and DUMBAULD, Senior District Judge.[*]

POSNER, Circuit Judge.

The plaintiff, Max Bittner, appeals from a judgment for the defendant, 98 F.R.D. 310, Sadoff & Rudoy Industries, a Wisconsin firm in the scrap-metal business, and from a separate order awarding attorney's fees to the defendant in an amount yet to

---

[*] Hon. Edward Dumbauld of the Western District of Pennsylvania.

be determined. The appeals bring up to us a variety of issues, of which the most difficult relate to procedural and substantive aspects of attorney-fee awards under ERISA (Employee Retirement Income Security Act), 29 U.S.C. §§ 1001 *et seq.*

Bittner (a vice-president of Sadoff & Rudoy, reporting to Edward Rudoy, the firm's general manager) and his family were entitled to medical benefits under the firm's employee benefit plan, a plan subject to ERISA. Bittner's son became mentally disabled. For a time Bittner received benefits under the plan for his son's condition, but these eventually were terminated, Bittner thought in violation of the terms of the plan. Rudoy invited him to file a friendly lawsuit against the company to resolve their dispute, and he did so. But the suit (brought in state court, and later dismissed) was not friendly. Besides continued benefits it asked for $500,000 in punitive damages from the company and from Rudoy himself on the ground that the termination of benefits had been "calculated and intended to cause the plaintiff emotional distress and mental instability for the ultimate purpose of obtaining monetary advantage for the defendants." When Rudoy read the complaint he summoned Bittner to his office and fired him. In the words of the district judge, "The confrontation between Mr. Rudoy and Mr. Bittner included no discussion of or reference to that part of the complaint in the state court action which sought a declaration of Mr. Bittner's rights under the [plan]. The only discussion of the complaint related to those parts of the complaint that sought compensatory and punitive damages for alleged intentional infliction of emotional distress. The discussion also involved allegations by Mr. Bittner that Mr. Rudoy had cheated the IRS and stolen from a client."

■ Bittner then brought the present suit, a damage action based on a provision in ERISA that makes it "unlawful for any person to discharge ... a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ...." 29 U.S.C. § 1140. Sadoff & Rudoy admits that if it fired Bittner because he sued it for benefits under ERISA it violated section 1140; but the district judge, who granted the defendant's motion to dismiss the complaint under Fed.R.Civ.P. 41(b) at the close of the plaintiff's case, found that Bittner was not fired for that reason. The judge did not say what the true reasons were, but he implied in the passage quoted earlier—and the record conclusively shows—that one was that Bittner had joined with his ERISA claim a claim for punitive damages for intentional infliction of emotional distress. If Bittner had sued Sadoff & Rudoy solely under Wisconsin tort law, and Rudoy had fired him, obviously Bittner could not complain that he had been fired in retaliation for exercising his rights under ERISA. His remedy, if there was any, would be a suit under the Wisconsin law of wrongful discharge, narrowly construed in *Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 572–74, 335 N.W.2d 834, 840–41 (1983). It should make no difference that instead of bringing a separate suit claiming damages for intentional infliction of emotional distress Bittner joined that claim with his ERISA claim in a single state court suit.

■ There is no question that Bittner's claim of intentional infliction of emotional distress was indeed based on state law and not on ERISA. The only type of civil action under ERISA that may be brought in state court is an action by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); see 29 U.S.C. § 1132(e)(1). The quoted language confers no right to sue for mental suffering caused by a violation of the terms of a plan. True, if Bittner had reasonably and in good faith, though mistakenly, sought a form of relief to which he was not entitled by ERISA, and Rudoy had fired him in pique at his doing so, the defendant might be liable for retaliation. See *Power Systems, Inc. v. NLRB,* 601 F.2d 936, 939–40 (7th Cir.1979); *Pettway v.*

*American Cast Iron Pipe Co.*, 411 F.2d 998, 1007 (5th Cir.1969). But all concerned have assumed from the beginning that Bittner's claim for punitive damages—the spark that ignited Rudoy—was based on state law rather than on a misconception (which could hardly have been reasonable) by Bittner of his rights under ERISA. As we are persuaded that the district court's findings concerning Rudoy's motive for firing Bittner were not clearly erroneous, we must therefore conclude that he was not fired for suing Sadoff & Rudoy under ERISA.

■ Bittner also argues that the district court erred in excluding certain letters that he contends illuminate Rudoy's motive. Since this was a bench trial, and the letters were not voluminous, it would have been better for the judge to have admitted them and given them such weight as they were worth. But their relevance was slight, and it is inconceivable to us that the district judge would have reached a different conclusion if he had admitted them. If there was error, it was harmless.

The remaining issues relate to attorney's fees. Fourteen days after the entry of judgment in its favor, Sadoff & Rudoy moved for an award of more than $40,000 in attorney's fees under 29 U.S.C. § 1132(g)(1), which provides that, "In any action under this subchapter by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." The district judge held that Sadoff & Rudoy was entitled to a reasonable attorney's fee because Bittner's section 1140 retaliation claim had been frivolous, but he also held that Sadoff & Rudoy had not itemized its legal expenses adequately and told it to resubmit its claim. Sadoff & Rudoy submitted a claim for some $8,000 in attorney's fees on which the district judge has yet to act. This appeal is from the order declaring that Sadoff & Rudoy was entitled to fees but refusing to award the amount sought.

■ The first question is whether the order was final, and so appealable, see 28 U.S.C. § 1291, when it did not specify the amount of fees to be awarded. We have found no cases on this point. A superficially compelling analogy is that a judgment declaring the defendant liable to the plaintiff for damages but not fixing the amount of damages is not final. *Liberty Mutual Ins. Co. v. Wetzel,* 424 U.S. 737, 744, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976). The reason is to spare the court of appeals from having to consider liability and damage issues in separate appeals. *Freeman United Coal Mining Co. v. Director, Office of Workers' Compensation Programs,* 721 F.2d 629, 630 (7th Cir.1983). And it is true that if we decided in this appeal that Sadoff & Rudoy was entitled to an award of attorney's fees, we might have to decide in a later appeal whether the amount of the award was proper. But if we wait for that appeal before deciding whether *any* award should have been made, we shall lose the chance to consider liability and (some) attorney's fee issues at the same time, which we can do here because the order holding that Sadoff & Rudoy was entitled to attorney's fees was entered shortly after the final judgment and therefore the appeals from both could be and were consolidated without delaying either appeal.

■ These circumstances bring into play the principle that "a court of appeals may, in the interest of orderly judicial administration, review matters beyond that which supplies appellate jurisdiction." *Scarlett v. Seaboard Coast Line R.R.,* 676 F.2d 1043, 1052 (5th Cir.1982); see also *Shaffer v. Globe Protection, Inc.,* 721 F.2d 1121, 1124 (7th Cir.1983). The judgment dismissing the complaint is properly before us, independently of the attorney's fee award, because a judgment is not deprived of its finality by the fact that the district court has not yet acted on a party's claim for statutory attorney's fees. *Freeman United Coal Mining Co. v. Director, Office of Workers' Compensation Programs, supra,* 721 F.2d at 631; *Abrams v. Interco Inc.,* 719 F.2d 23, 26–27 (2d Cir.1983). We might as well decide at the same time what are likely to be the dispositive issues relating to the award of attorney's fees. It is possible but

unlikely that we shall have to consider the award again.

And if we waited, we still might have to decide two fee appeals—one from the award for work in the district court, the other from an award for work in this court, since a party who is awarded fees for winning in the district court will usually get fees for defending his victory in the court of appeals. See, e.g., *Muscare v. Quinn*, 680 F.2d 42, 45 (7th Cir.1982); *Bond v. Stanton*, 630 F.2d 1231, 1235 (7th Cir.1980). If instead we decide the present appeal from the fee order—and suppose we affirmed that order—the district court, by waiting till the appellate proceedings were concluded, could make a single award covering both the district court and the court of appeals proceedings. Then there would be a single appealable order on the amount of fees.

The sad fact is that there is no sure way of preventing multiple appeals in a case where the prevailing party has rights under an attorney's fee statute as well as substantive rights. There would be no net judicial economy, but if anything a net diseconomy, if we held that we could not consider the merits of the fee order until the amount of fees to be awarded is fixed. We think we can.

The next question, also one of first impression, is whether the request for fees was filed in the district court on time. It was if fees under section 1132(g)(1) are properly taxable as costs under Rule 54(d) of the Federal Rules of Civil Procedure, which has no deadline except the implied one of reasonableness, not here exceeded. Although local rules of court sometimes require that a motion for costs be filed within a specified period after the judgment is entered, often five days, these rules have been held inapplicable to motions for attorney's fees. *Gautreaux v. Chicago Housing Authority*, 690 F.2d 601, 611 (7th Cir.1982). But the defendant's request was not timely if it had to be made in a motion under Rule 59(e) to alter or amend the judgment. Such a motion must be filed within ten days, and the time cannot be extended. Rule 6(b).

*White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), held that a motion for attorney's fees under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, is properly brought under Rule 54(d) rather than Rule 59(e). That Act, however, differs in two relevant respects from section 1132(g)(1). It provides that attorney's fees when awarded shall be taxed as costs; and it is a separate statute from the statutes under which the suits in which fees may be awarded under the Act are brought. These features show that an award of attorney's fees under the Act is not a part of the original judgment, as damages would be for example, but is separate, as costs traditionally are, and therefore that the award, if not made in the original judgment, does not have to be requested by way of a motion to alter or amend the judgment. Section 1132(g)(1), in contrast, does not describe attorney's fees as costs, and is part of a substantive statute. But *Spray-Rite Service Co. v. Monsanto Corp.*, 684 F.2d 1226, 1248 (7th Cir.1982), cert. granted on other grounds, 103 S.Ct. 1249 (1983), suggests that these differences may not matter. That decision extended the teaching of *White* to requests for attorney's fees under section 4 of the Clayton Act, 15 U.S.C. § 15, which authorizes private antitrust damage actions and entitles prevailing plaintiffs in them to recover "the cost of suit, including a reasonable attorney's fee," and says nothing (more) about taxing such fees as costs. *Spray-Rite*, however, distinguished *Hairline Creations, Inc. v. Kefalas*, 664 F.2d 652, 655–56 (7th Cir. 1981), where we had held that a request for fees under 15 U.S.C. § 1117, which authorizes an award of reasonable attorney's fees for trademark infringement "in exceptional cases," must be made under Rule 59(e).

*Hairline Creations* is an outlier. Most cases, under most attorney-fee statutes, follow the Rule 54(d) route. See *Gordon v. Heimann*, 715 F.2d 531, 537–38 (11th Cir.1983), and cases cited there. There is a practical reason for this: Especially in substantial litigation, where large fees may

reasonably be requested, it is unrealistic to expect the prevailing party's lawyer to be able to get a carefully formulated fee request in within the Rule 59(e) deadline of ten days—a deadline that cannot be extended. The Rule 59(e) route would trap the unwary in some cases and in others cause half-baked fee requests to be submitted that would have to be amended later. If *Hairline Creations,* decided before *White* as well as before *Monsanto,* is still good law (a question we need not decide here), it is so only because to allow attorney's fees to be awarded in "exceptional" cases may be thought to imply that such fees are a sanction in the nature of punitive damages; and of course a plaintiff disappointed with a judgment that did not include an award of punitive damages would have to get the judgment amended if he wanted them added. The analogy is imperfect, because 15 U.S.C. § 1117 allows a prevailing defendant as well as a prevailing plaintiff to obtain an award of attorney's fees "in exceptional cases" and a defendant could never get an award of punitive damages. But the primary purpose of the "exceptional cases" criterion was to authorize the award of attorney's fees to plaintiffs, in cases "in which the infringement was malicious, fraudulent, willful, or deliberate," *Hindu Incense v. Meadows,* 692 F.2d 1048, 1051 (6th Cir.1982); see also *VIP Foods, Inc. v. Vulcan Pet, Inc.,* 675 F.2d 1106, 1107 (10th Cir.1982); *Hairline Creations, Inc. v. Kefalas, supra,* 664 F.2d at 657–58, and these are familiar grounds for awarding punitive damages. However, nothing in the language of section 1132(g)(1) suggests that an award of attorney's fees under that section serves the same purpose as awarding punitive damages (and there is no pertinent legislative history); and we are about to see that the courts have not interpreted section 1132(g)(1) as if its intent were punitive.

We conclude that an attorney's fee award under section 1132(g)(1) should be sought as it was here by filing a motion under Rule 54(d). Therefore Sadoff & Rudoy's motion was timely, and we come at last to the merits of the fee order.

If the district judge had been correct that Bittner's suit was frivolous he would not have needed a statutory basis for awarding the defendant a reasonable attorney's fee; the common law powers of the court would have been sufficient. *Alyeska Pipeline Service Co. v. Wilderness Soc'y,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). A frivolous suit, however, is not merely a suit that fails, or even a suit that lacks a solid basis—a long shot. See *McDonald v. Schweiker,* 726 F.2d 311, 316 (7th Cir.1983). It is a suit so completely without hope of succeeding that the court can infer that the plaintiff brought it to harass the defendant rather than to obtain a favorable judgment. *Coyne-Delany Co. v. Capital Development Bd.,* 717 F.2d 385, 390 (7th Cir.1983). As we shall see, this was not such a suit.

If the defendant in this case is entitled to an award of attorney's fees, therefore, it is only by virtue of section 1132(g)(1), which commits to the district judge's discretion the question whether to award fees in a particular case. This discretion is not to be exercised without any criteria; it is not unlimited. *Janowski v. International Brotherhood of Teamsters,* 673 F.2d 931, 940 (7th Cir.1982), vacated on other grounds, —— U.S. ——, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983), is illustrative of a number of cases that list five factors for a district judge to consider in evaluating a fee request under section 1132(g)(1): "(1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions." Other decisions that state the identically worded or a similarly worded test include *Leigh v. Engle,* 727 F.2d 113, 139 n. 39 (7th Cir.1984); *Marquardt v. North American Car Corp.,* 652 F.2d 715, 717 (7th Cir.1981); *Hummell v.*

*S.E. Rykoff & Co.,* 634 F.2d 446, 452 (9th Cir.1980); *Eaves v. Penn,* 587 F.2d 453, 465 (10th Cir.1978). Factor 1 in *Janowski's* five-factor test seems in context to refer to the easy case, not before us, where the litigating position of the party opposing the application for attorney's fees is frivolous, and factor 2 to a case where any award of attorney's fees to the plaintiff would be paid not out of the pockets of the people responsible for the denial of benefits to the plaintiff—the plan's trustees, for example—but out of the plan assets themselves, thus hurting the plan beneficiaries. That is not an issue here either, since the defendant rather than the plaintiff is seeking attorney's fees. Factor 3 seems closely related to 2; the deterrent effect of an award would be blunted if it were not paid by the culpable parties. The remaining factors go to the relative merits of the parties' litigating positions. The benefit conferred on other plan participants or beneficiaries (factor 4) is an important consideration in evaluating the merit of the plaintiff's case (5)—though again only in a case where the plaintiff is seeking an award of attorney's fees.

Without questioning the soundness or utility of this test, we note that, at least as stated in *Janowski,* it is oriented toward the case where the plaintiff rather than the defendant prevails and seeks an award of attorney's fees. The term "offending parties," obviously a reference to defendants, is a further clue. Although virtually the same test has been applied to a defendant's request for an award of attorney's fees, notably in the *Marquardt* case, the court stated there, "We do not hold that these five factors constitute the only test which the district court can use in deciding whether to award attorneys' fees under ERISA." 652 F.2d at 717. Some further elaboration may therefore be useful.

After *Ruckelshaus v. Sierra Club,* —— U.S. ——, 103 S.Ct. 3274, 3276–77, 77 L.Ed.2d 938 (1983), it would be an abuse of discretion for the district court to award attorney's fees to a losing party, even though section 1132(g)(1) does not in so many words confine awards of attorney's fees to winners, as the Civil Rights Attorney's Fees Awards Act does. But unlike that Act, ERISA does not create a presumption in favor of a prevailing plaintiff's request for fees and against a prevailing defendant's. Compare *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1265 (5th Cir.1980), with *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983), and *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). The history of the Civil Rights Attorney's Fees Awards Act indicates as clearly as a legislative history can that the purpose of the statute (despite its neutral wording) was to encourage meritorious civil rights litigation by allowing prevailing plaintiffs to obtain an award of attorney's fees almost as a matter of course but prevailing defendants only if the suit was frivolous. See H.R.Rep. No. 1558, 94th Cong., 2d Sess. 6–7 (1976); S.Rep. No. 1011, 94th Cong., 2d Sess. 4–5 (1976), U.S.Code Cong. & Admin.News 1976, p. 5908. There is nothing comparable in the legislative history of ERISA; nor do pension plan participants and beneficiaries constitute a vulnerable group whose members need special encouragement to exercise their legal rights, like a racial minority. Members of minority groups are not the only or even the most frequent civil rights plaintiffs, because any suit for deprivation of a federal constitutional right under color of state law can be brought under section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, but they were at the forefront of congressional concern in passing the attorney's fees awards act. See H.R.Rep. No. 1558, *supra,* at 4–8; S.Rep. No. 1011, *supra,* at 3–4. Although both *Marquardt* (see especially 652 F.2d at 720 and n. 6) and *Leigh v. Engle* (see 727 F.2d at 139 n. 39) suggest that plaintiffs are more likely to recover attorney's fees in ERISA cases than defendants (and indeed this may be a correct prediction), *Marquardt* cites *Iron Workers,* which rejects the analogy of the Civil Rights Attorney's Fees Awards Act, with approval, see 652 F.2d at 720 n. 6 ("we do not find that our analysis ... differs significantly

from the Fifth Circuit's [in *Iron Workers*]"), as does *Janowski*, see 673 F.2d at 940–41, and the Tenth Circuit's recent opinion in *Gordon v. United States Steel Corp.*, 724 F.2d 106, 108 (10th Cir.1983).

It does not follow that whoever wins, plaintiff or defendant, is entitled to attorney's fees as a matter of course under section 1132(g)(1). If that was the legislators' intention they expressed it very badly by giving the district court "discretion" to award or not to award fees. Almost certainly it was not their intention. It would be tantamount to adopting the English (and Continental) rule that the winning party to a lawsuit is automatically awarded a reasonable attorney's fee. Not only has American common law, state and federal, steadfastly refused to adopt the English rule, see *Alyeska Pipeline Service Co. v. Wilderness Soc'y, supra,* 421 U.S. at 271, 95 S.Ct. at 1628, but it is very difficult to find among the federal fee-shifting statutes, numerous as they now are, ones that adopt it. We have found only one, the obscure Jewelers' Hall-Mark Act, 15 U.S.C. §§ 298(c), (d). It is most doubtful that section 1132(g)(1), which purports to commit the question of fee-shifting to the district court's discretion, was intended to be another.

With automatic shifting in the English and Continental manner, the approach of the Civil Rights Attorney's Fees Awards Act, and a frivolousness standard all excluded, we turn for a useful analogy to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), which entitles a prevailing party in many types of suit against the government to a reasonable attorney's fee "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." These words create a modest presumption (modest because of the "special circumstances" exception) in favor of awarding reasonable attorney's fees to the winning party, plaintiff or defendant, unless the loser's position, while rejected by the court, had a solid basis—more than merely not frivolous, but less than meritorious. See *McDonald v. Schweiker, supra,*

726 F.2d at 316, for our recent articulation of this intermediate standard. This standard is consistent with previous articulations of the test under section 1132(g)(1) but is simpler and more definite. We are not much concerned with the argument that if Congress in section 1132(g)(1) had wanted to adopt the same standard as in the Equal Access to Justice Act it would have used the same words. The Equal Access to Justice Act, enacted six years after section 1132(g)(1), was not an available model to the draftsmen of that section. The Act gives felicitous expression to the intermediate position between automatic fee shifting (or nearly automatic, as in the Civil Rights Attorney's Fees Awards Act) and the common law position which allows shifting only against the frivolous litigant. It thus provides a model for courts that must try to give meaning to the word "discretion" in an earlier attorney's fees statute also intended to take the middle way.

The exception for special circumstances that would make an award of fees unjust in a particular case imparts flexibility to the standard and continuity with the cases that use a multi-factored approach. Some of those factors, as well as others not mentioned in those cases, may in particular cases constitute exceptional circumstances that would make a fee award against a plaintiff unjust even though he did not have a solid basis for his suit. Although the plaintiff's good faith is not alone enough to prevent the court from awarding the defendant a reasonable attorney's fees—otherwise the "substantially justified" test would be set at naught—it may in a special case be evidence of exceptional circumstances that would make the award unjust. This may be such a case, as we shall see. Another possible factor is the plaintiff's ability to pay an award; if he cannot pay one without great hardship, and he brought the case in good faith though without substantial justification, it may be unjust to award a fee to the defendant. And there may be other factors.

If there were no question how the standard should be applied in the present case

we could apply it ourselves, but there is a question. Although it is not altogether clear from the district judge's very brief opinion on fees why he thought Bittner's case frivolous, the reason appears to be that Bittner did not testify (or present any other evidence) that he was fired because of the ERISA count in the suit. (This, of course, is why the court was able to dismiss the suit at the close of the plaintiff's case.) Bittner's key testimony was, "I was called into Mr. Rudoy's office and he was reading over the law papers, the suit papers, and he was pretty upset about it. And he said to me, 'You're suing for stress.' And I told him I certainly had plenty of stress." Bittner did not testify that Rudoy was upset about the ERISA count; and since it is uncontested that the ERISA part of the suit had been invited by Rudoy, the inference that he was indeed upset, as he said, by the intentional-infliction-of-emotional-distress count, with its alarming request for a half million dollars in punitive damages, and not by the ERISA count, was pretty overwhelming.

But it does not follow that Bittner's case was frivolous. He was fired because he filed a lawsuit that included an ERISA count; this much is undisputed; and while the district court was entirely justified in splitting the suit between its ERISA and state-law counts for purposes of analyzing Bittner's claim of retaliation, we do not think that Bittner's position that all parts of the suit related to his ERISA claim, and that the loaf cannot be sliced as finely as the district court (and we) believe it can be, is frivolous. But whether that position is substantially justified (and not merely nonfrivolous) is another question, and one that the district judge should take first crack at under a statute that commits the question of attorney's fees to his discretion. He must also consider on remand whether exceptional circumstances, arising for example from the personal tragedy that precipitated the dispute between Bittner and the company, might justify withholding an award of attorney's fees to the company even if Bittner's suit for retaliation did not have a substantially justified basis.

* Judgment and opinion vacated. See 735 F.2d 1049.

The judgment dismissing the complaint is affirmed but the order awarding attorney's fees to the defendant is reversed and the matter remanded for further proceedings consistent with this opinion. The motion to strike Bittner's reply brief is denied. Circuit Rule 18 shall apply, and no costs will be awarded in this court.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.