EXCHANGE NATIONAL BANK OF CHICAGO, Plaintiff-Appellee,

v.

Harold DANIELS and Irene Daniels, Defendants-Appellants.

Nos. 84–2037, 84–2232 and 84–2737.

United States Court of Appeals, Seventh Circuit.

Argued April 19, 1985.

Decided May 29, 1985.

Rehearing Granted July 12, 1985 in No. 84–2037.

Rehearing Denied July 12, 1985 in Nos. 84–2232 and 84–2737.

Rehearing En Banc Denied July 12, 1985.

Narcisse A. Brown, Schwartz, Cooper, Kolb & Gaynor, Chtd., Chicago, Ill., for plaintiff-appellee.

James B. Burns, Isham, Lincoln & Beale, Chicago, Ill., for defendants-appellants.

Before WOOD and EASTERBROOK, Circuit Judges, and DUMBAULD, Senior District Judge.*

EASTERBROOK, Circuit Judge.

Harold Daniels is the maker of a $4.5 million note, which his wife Irene Daniels guaranteed. The Danielses (the Borrowers) have a cattle business in New Mexico. They borrowed the money from Exchange National Bank (the Bank) over several years. They used the money to finance that business—and, as it turns out, a joint venture in which they were partners with the two employees of the Bank who negotiated and supervised the loan.

When the Borrowers did not pay, the Bank filed this diversity action to collect. The Borrowers replied that the Bank's employees had promised them that the employees would repay portions of the loan devoted to the joint venture and that the Borrowers need not repay personally. The district court rejected this defense under state law and entered summary judgment for the Bank on the issue of liability. The award, including interest, was approximately $6 million. Some months later, the court awarded attorneys' fees to the Bank, as the note provided. We first must decide whether an appeal from the award of fees, the "final decision" in the case, brings up the disposition of the merits too. We conclude that it does not. We decide on the merits only the challenge to the award of fees, which we affirm.

I

The district court's opinion awarding summary judgment to the Bank was rendered on April 25, 1984. On May 10 the court entered a judgment, and it entered an order on May 17 to correct a mistake in adding principal and interest to derive the full award. The judgment does not mention Fed.R.Civ.P. 54(b), but it includes, in the language of that rule, a "finding that there is no just reason for delay." In three places the document refers to itself as a "final judgment." It was not final in the sense of winding up the case, though. It declared that the Bank was entitled to attorneys' fees in an amount still to be determined.

On May 30 the Borrowers sought reconsideration under Fed.R.Civ.P. 59(e). On June 18 they filed both a notice of appeal (No. 84–2037) from the judgment and a motion to enlarge the time within which to file an appeal. The motion contended that there is a conflict among the circuits on the

* Hon. Edward Dumbauld, of the United States District Court for the Western District of Pennsylvania, sitting by designation.

question whether the entry of judgment on the merits is an appealable order when questions of fees remain to be decided; the Borrowers asked the district court to enlarge the time for appeal so that the merits and the questions about fees could be presented in a single appeal.

On June 28 the district court denied the Rule 59 motion as untimely. It "granted" the motion to extend the time for appeal, writing: "Said defendants' time for filing notice of appeal is extended ten (10) days from May 10, 1984." Because the Borrowers had had 30 days from May 10 without this "extension," this was the equivalent of denial. The Borrowers filed a new appeal (No. 84–2232) on July 24.

Finally, on September 26 the district court entered an opinion and order awarding fees and expenses of about $108,000. On October 11 the Borrowers filed a notice of appeal (No. 84–2737) directed to the order awarding fees. The Bank maintains that this is the only effective notice of appeal, and that it presents for our review only issues concerning fees and costs. We agree.

■ The appeal filed on June 18 (No. 84–2037) is either too late or too early, depending on the effect of the motion for reconsideration. If the motion for reconsideration was timely, then the notice on June 18 was ineffective because the motion suspended the finality of the judgment, making appeal impossible until the court had acted on the motion. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). If the motion for reconsideration was not timely, then the appeal was out of time. The Borrowers had 30 days to file a notice of appeal, and that time expired on June 9. A trivial or clerical correction to a judgment (such as the order of May 17) does not restart the time for appeal. *FTC v. Minneapolis-Honeywell Regulator Co.*, 344 U.S. 206, 211–12, 73 S.Ct. 245, 248–49, 97 L.Ed. 245 (1952). Unless the second order "has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with final-

ity" (*id.* at 212, 73 S.Ct. at 249), the first order controls the time for appeal. Here the district court corrected its obvious arithmetical error; getting one's sums right is desirable, but a correction of this sort is not an alteration of settled obligations.

■ The appeal filed on July 24 (No. 84–2232) is timely only if the motion for reconsideration was timely or the district court was *required* to grant an extension of time. The Borrowers do not argue that the district court was required to give them more time; the disposition of requests for extensions is entrusted to the district court's discretion. It is conceivable that the district judge meant to extend the time until 10 days after its order of June 28, as Fed.R.App.P. 4(a)(5) permits, or to grant the Borrowers an *additional* ten days to appeal the May 10 order. But the order does not say either thing. The Borrowers did not seek clarification from the district court or discuss the interpretation of the order in their briefs here (they mention it only at page 12 of their reply brief, without elaboration); they did not file a new notice within ten days after June 28. We therefore treat the order as ineffectual.

■ The motion for reconsideration also does not help the Borrowers. Rule 59(e) provides that the motion must be filed within 10 days. The Borrowers missed the time; they did not even file the motion within 10 days of the corrected judgment entered on May 17. The Borrowers say that the motion was timely because the judgment of May 10 was not "final." If the judgment was not "final," though, there was nothing to alter or amend. The time to appeal had not begun to run, the motion of May 30 would not affect the time, the notice of appeal filed on July 24 would be irrelevant, and the appeal filed on October 11 would be sufficient to preserve all issues. The Borrowers' appeal therefore stands or falls on the notice filed October 11.

## II

The parties have devoted a great deal of attention to the question whether an ag-

grieved party *always* may appeal from an order disposing of the merits but reserving the amount of fees. The Bank says that it may, citing *White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), and other cases holding that the merits and fees are separable, and therefore separately appealable, issues. E.g., *Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820 (7th Cir.1984). The Borrowers respond the merits are appealable when fees rest on statutes, they are not appealable when fees rest on a clause in a contract. *Oxford Production Credit Association v. Duckworth*, 689 F.2d 587 (5th Cir.1982); *Union Tank Car Co. v. Isbrandtsen*, 416 F.2d 96 (2d Cir.1969).

This exchange misses an essential point. Suppose for the moment that the merits and the fees are sufficiently independent to allow independent appeals. It does not follow that the failure to appeal from whichever order is entered first forecloses the aggrieved party from raising all of the issues on appeal from the final judgment at the end of the case.

██ Many orders during the course of a case might be sufficiently independent to be deemed "final decisions" under 28 U.S.C. § 1291, immediately appealable under the "collateral order" doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and related principles. Although a party has a *right* to take an immediate appeal, there is no *obligation* to do so. Until the district court enters a judgment on a "separate document" within the meaning of Fed.R.Civ.P. 58, a party is free to accumulate issues. An appeal from the Rule 58 "separate document" at the end of the case brings up the whole case, even if that document was entered long after the opinion or order disposing of the issues the party now seeks to raise on appeal. Compare *United States v. Indrelunas*, 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973) (no need to appeal until a Rule 58 document has been entered), with *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (appeal may be possible prior to the Rule 58 document). See also *United States v. Clark*, 445 U.S. 23, 25–26 n. 2, 100 S.Ct. 895, 898–99 n. 2, 63 L.Ed.2d 171 (1980), which holds that an appeal from a final judgment brings up all issues even though a party could have taken an appeal from an earlier interlocutory order disposing of the critical issue.

██ The question whether a particular order in a case is sufficiently "final" to be appealable under 28 U.S.C. § 1291 can pose questions of great subtlety. The rule that only a separate document starts the running of the time for appeal gives the parties the notice they need. A rule that required people to appeal from potentially "final" decisions not embodied in separate documents would lead to a blizzard of protective appeals as litigants tried to ensure their rights to review; many times the rule also would lead to pointless forfeitures as litigants inadvertently overlooked the possibility that a particular order might be characterized as a "final decision." The separate document rule protects the parties from forfeitures and the appellate courts from a torrent of appeals. Under Rule 58 it is never necessary to file more than one appeal per final judgment.

The district court entered a separate document, labeled a "final judgment," on May 10. We must decide whether this is the sort of decision that triggers the need to appeal. If the document set off the time for appeal as from a final judgment, then 28 U.S.C. § 2107 and Fed.R.App.P. 4(a) mean that a failure to appeal precludes further review of the merits. If, on the other hand, this judgment just permits review in the same sense that a collateral order, deemed a "final decision" under *Cohen*, permits review, then the failure to appeal within 30 days does not foreclose review of all issues on appeal from the *final* final judgment.

██ If we were writing on a clean slate, we would doubt the propriety of characterizing the May 10 document as a "final judgment." Rule 54(b), like other principles allowing more than one appeal per

case, is designed to alleviate a problem created by modern rules of pleading, which allow the joinder of multiple parties and claims. This joinder can create "hardship and denial of justice through delay if each issue must await the determination of all issues as to all parties before a final judgment can be had." *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299 (1950). Like the *Cohen* collateral order doctrine, Rule 54(b) allows an aggrieved party to obtain review that will accelerate the resolution of one question without disrupting the rest of the litigation and without presenting the same facts to the appellate court repeatedly. But appeals from collateral orders are not mandatory, and there is no pressing reason why a party should be *compelled* to proceed with an immediate appeal on one part of the case under Rule 54 if he is willing to wait for the end. Indeed, Rule 54(b) orders are the exception, usually entered at the request of the losing party. A district judge ordinarily should not enter a Rule 54(b) document unless the losing party requests it. When the district court forbears from using Rule 54(b) to carve the litigation into little pieces, the appeal from the final judgment brings up the whole case.

This is not only the ordinary course but also the preferable one. Multiple appeals occupy in the aggregate more time of counsel and appellate courts than single appeals raising multiple issues. The final decision rule implemented by 28 U.S.C. § 1291 makes one appeal per case the norm. The requirement of finality "is the dominant rule in federal appellate practice". *Flanagan v. United States*, 465 U.S. 259, 104 S.Ct. 1051, 1057, 79 L.Ed.2d 288 (1984). A decree is final "when it terminates the litigation between the parties on the merits of the case, and leaves nothing to be done but to enforce by execution what has been determined." *St. Louis, Iron Mountain & Southern R.R. v. Southern Express Co.*, 108 U.S. 24, 28–29, 2 S.Ct. 6, 8, 27 L.Ed. 638 (1883). A lingering controversy about fees defeats finality in this strong sense.

■ Often an appeal under Rule 54(b) presents nice questions of appealability. E.g., *Liberty Mutual Insurance Co. v. Wetzel*, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976). An order is appealable under Rule 54(b) only if the claims designated in the order lack a substantial factual overlap with those remaining in the district court and there would not be a need for multiple appellate consideration of the same issues. E.g., *Parks v. Pavkovic*, 753 F.2d 1397, 1401–02 (7th Cir.1985); *Jack Walters & Sons Corp. v. Morton Building, Inc.*, 737 F.2d 698, 701–02 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984). It may be more difficult to determine whether a decision is appealable under Rule 54(b) than whether that decision was correct. When a party saves up all issues for a single appeal from the final judgment, court and counsel can avoid these difficult jurisdictional issues and concentrate on the merits. If a litigant with a right to more than one appeal is content to take just one, it should require a powerful reason to override this decision.

■ We are not free to pursue this reasoning to its conclusion, however. *Swanson v. American Consumer Industries, Inc.*, 517 F.2d 555, 561 (7th Cir.1975), holds that when a district court enters a judgment on the merits and reserves questions about fees, the aggrieved party must appeal at once or lose the right to an appeal on the merits. Because of the considerations we have discussed, we might be willing to reconsider *Swanson* if it were a derelict, but it is not. Several other circuits have held that when a court properly enters an order on a separate document, whether or not under Rule 54(b), the losing party must appeal at once on pain of foregoing appeal later. *Morgan v. Union Metal Manufacturing*, 757 F.2d 792 (6th Cir. Mar. 26, 1985); *International Association v. Madison Industries, Inc.*, 733 F.2d 656 (9th Cir.1984); *Bernstein v. Menard*, 728 F.2d 252 (4th Cir.1984); *Smith v. Mine Safety Appliances Co.*, 691 F.2d 724 (5th Cir.1982); *Scholl v. District of Columbia*, 331 F.2d 1018 (D.C.Cir.1964). Cf. *Dickin-*

*son, supra* (an order that finally disposes of all questions concerning one party is final with regard to that party, and an appeal from a modification of the decree that does not alter that party's rights is too late).

The first characteristic of a good jurisdictional rule is predictability and uniform application. If we indulged our preferences at this late date, we would create an unpredictable situation in which jurisdiction would depend on the circuit in which the case arose, and maybe even on the type of order entered. The approach of *Swanson* has some other advantages, too. It avoids the need to identify "the" final order in a case—which itself might be a bootless task. If the time for appeal on any Rule 58 document runs, the parties may conduct or settle the remainder of the litigation on the assumption that the rights covered by the first judgment are fixed. We therefore follow *Swanson* and hold that once the district court properly enters an appealable judgment on a separate document, the aggrieved party must appeal at once even if other issues remain for decision.

## III

■ This leaves only the question whether the judgment of May 10 was appealable at the time. If it was not, the fact that it was labeled "final" would not cause the Borrowers to forfeit their right to an appeal. *Page v. Preisser*, 585 F.2d 336, 338 (8th Cir.1978). We conclude that it was appealable. *Swanson* held that a judgment on the merits is appealable—independently of Rule 54(b)—despite the fact that questions of fees remain. *White v. New Hampshire Department of Employment Security, supra*, strongly supports this conclusion. Since the Supreme Court's decision in *White*, we have allowed appeals on the merits to precede adjudication of the prevailing party's entitlement to fees, and we have even allowed Rule 54(b) appeals from orders determining the entitlement to fees to precede adjudication of the amount of fees. *Bittner v. Sadoff & Rudoy Industries, supra*, 728 F.2d at 826–27.

We have expressed qualms about the use of Rule 54(b) to sever questions of entitlement to fees for immediate appeal, because the Rule covers only separate *claims*, and the amount of fees is not a "claim" separate from the entitlement to fees. *Mulay Plastics, Inc. v. Grand Trunk Western R.R.*, 742 F.2d 369 (7th Cir.1984) (fees awarded as penalties are not separate claim under Rule 54(b)); cf. *Hershinow v. Bonamarte*, 735 F.2d 264, 266–67 (7th Cir.1984); *Liberty Mutual, supra* (substantive issue in case is not a claim separate from amount of damages). But this consideration does not govern here. The judgment of May 10 was a "final decision" independently of Rule 54(b). See *White* and *Swanson*. Under *Hershinow* and *Mulay* the court would have been free to decline to consider on appeal the portion of the May 10 judgment fixing the entitlement to fees, so long as the amount was undecided, but this does not undercut the finality under *White* of the portion of the May 10 judgment concluding the case on the merits.

It may be that the Court did not mean in *White* to make the decision on the merits appealable independently of the fees; the case nominally held only that fees were so separate that they need not be raised under Rule 59(e) within 10 days. But the rationale leading to this result—that fees have little or nothing to do with the merits—also produces an appealable final decision, which in turn sets the outer limit within which the notice of appeal must be filed. As a result, the Court's effort in *White* to prevent forfeitures of fees (which could occur if litigants did not act in the 10 days provided by Rule 59(e)) now can create forfeitures of challenges to the decision on the merits (if litigants do not act in the 30 days provided by Rule 4(a)). The approach we discussed at pages 290–291 above might prevent this forfeiture, but we have elected to follow *Swanson* and five other courts instead.

■ The Borrowers press the point that fees provided by statute are different from fees provided by contract. *White* dealt with fees under 42 U.S.C. § 1988. We

conclude, however, that the source of the power to award fees does not matter. The finality of a decision depends on the kinds of issues the court determines, not on the source of authority for the court's decision. *White, Swanson,* and *Bittner* establish that a disposition of all claims on the merits is appealable, even though questions about fees remain. If that disposition on the merits is embodied in a separate document within the meaning of Rule 58—as it was in *Swanson* and is here—then the losing party *must* appeal. If it is not so embodied, the losing party *may* appeal but may also elect to wait. This rule has the virtues of generality and certainty, which a good jurisdictional rule should. A rule turning on the source of the entitlement to fees would be far too uncertain.

We recognize that several courts have answered this question the other way. For example, *C.I.T. Corp. v. Nelson,* 743 F.2d 774 (11th Cir.1984), holds that an appeal from an order awarding fees brings up the whole case when the fees are provided by contract rather than statute. The Eleventh Circuit thought that contractual fees are "part of [the prevailing party's] compensation for injury" (*id.* at 775). Because the Supreme Court said in *White* that statutory fees under 42 U.S.C. § 1988 are "not compensation for the injury giving rise to the action," 455 U.S. at 452, 102 S.Ct. at 1166, the Eleventh Circuit thought contractual fees different. The appealability of an order that leaves fees unresolved " 'depends on the circumstances of each case'," that court concluded. 743 F.2d at 775, quoting from *McQurter v. City of Atlanta,* 724 F.2d 881, 882 (11th Cir.1984). For similar rulings after *White* see *Lewis v. S.L. & E., Inc.,* 746 F.2d 141 (2d Cir.1984); *Holmes v. J. Ray McDermott & Co.,* 682 F.2d 1143 (5th Cir.1982). For post-*White* decisions that draw no distinctions based on the source of the entitlement to fees, see *Morgan v. Union Metal Manufacturing, supra,* 757 F.2d at 795; *International Association v. Madison Industries, supra.*

We reject as altogether too metaphysical the distinction between fees that are "compensation for injury" and those that are not. All awards of fees make the prevailing party better off. Whether this benefit is "really" a way to compensate for the underlying hurt or instead a way to reduce the cost of litigation, thus making redress of the underlying hurt more likely and leaving the prevailing party with a greater net award, is a question of semantics rather than substance. Resolution of this question would depend on the legislative (or bargaining) history of a given statute or contract—if indeed such a question ever has a sensible answer. Jurisdictional rules should be framed to avoid such case-by-case decisions. *United States v. MacDonald,* 435 U.S. 850, 857 & n. 6, 98 S.Ct. 1547, 1551 & n. 6, 56 L.Ed.2d 18 (1978); *Illinois v. Schweiker,* 707 F.2d 273, 277–78 (7th Cir.1983).

The only case in this circuit that even colorably supports a rule that makes appealability turn on the source of authority to grant fees is *Hairline Creations, Inc. v. Kefalas,* 664 F.2d 652 (7th Cir.1981). *Hairline* holds that attorneys' fees under the trademark laws are so integral to and intertwined with the merits that requests for fees must be made as motions to alter or amend the judgment under Rule 59. The court held an application for fees untimely because not made within the ten days provided by Rule 59(e).

The decision in *Hairline* depended on a peculiarity of the statute at hand, which restricted fees to exceptional cases. Fees served to increase the recovery in egregious cases, thus increasing the effective damages in such cases. They could be characterized as a separate penalty for certain offenses. *Hairline* was decided before the Supreme Court held in *White* that requests for fees under 42 U.S.C. § 1988 need not be presented under Rule 59(e). We distinguished *Hairline* on razor-thin grounds in *Spray-Rite Service Corp. v. Monsanto Co.,* 684 F.2d 1226, 1248 n. 22 (7th Cir.1982) (fees under the antitrust laws are separate from the merits), *aff'd on other grounds,* —— U.S. ——, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984). More recently we characterized *Hairline* as an "outlier"

and questioned whether it survived *White.* See *Bittner v. Sadoff & Rudoy Industries, supra,* 728 F.2d at 827–28. We did not need to decide the question in *Bittner;* we do not do so today either. It is enough to say that *Hairline* states a peculiarity of patent and trademark litigation. We may reexamine *Hairline* if the occasion arises; we hold today that under *White* all other requests for fees must be treated as procedural equivalents. The only rule that will avoid unnecessary yet thorny jurisdictional issues is one that treats questions of fees as separate from the merits.

 *White, Swanson,* and *Bittner* were decided before the district court's judgment in this case and gave the Borrowers ample notice of the path we would follow. The Borrowers knew the problem; their motion to extend the time for appeal pointed to the disagreement among the circuits on the finality of decisions such as the order of May 10. The Borrowers had only to file a notice of appeal by June 9 or a Rule 59(e) motion by May 20. We can do nothing for them now. "A court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, a jurisdictional ruling may never be made prospective only." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981).

## IV

 The only issue properly before us is the award of some $108,000 in legal fees and costs. The district court awarded to the Bank the exact amount it paid to its lawyers for the conduct of the litigation. The Borrowers maintain that they should not pay for time spent defending against their counterclaims in Illinois and two independent suits filed in other states, time they call unnecessary, and expenses not appropriately taxed as "costs." The district court considered and rejected these arguments in a careful and thoughtful opinion.

The Borrowers rely on *Kaiser v. Olson,* 105 Ill.App.3d 1008, 61 Ill.Dec. 624, 435 N.E.2d 113 (1982), which held that a contractual provision authorizing fees for the "collection" of a note did not authorize fees for collateral legal work, such as defending against the borrower's counterclaims. The district court concluded, however, that the provisions in this note are broader than those in *Kaiser* because they authorize fees for all work in both the "collection" and the "enforcement" of the note. See also *Tartell v. Chelsea National Bank,* 351 F.Supp. 1071, 1079 (S.D.N.Y.), *aff'd,* 470 F.2d 994 (2d Cir.1972). The district court concluded that the Borrowers' counterclaims—alleging among other things that the Bank's employees fraudulently induced them to enter into the note and guaranty—were integral to the "enforcement" of the note, and that the other litigation commenced by the Borrowers was designed to frustrate the enforcement of the note. These characterizations were justified, and the decision to award fees was not an abuse of discretion.

 The Borrowers' attack on the amount of time counsel spent, some 890 hours, was considered fully by the district court. The Borrowers not only initiated two other suits but also defended this one by arguing that the Bank's officers committed fraud, that the note was not supported by consideration, that the Bank's officers ratified two employees' oral representations that the Bank would not collect the debt, and that the note violated 12 U.S.C. § 1972 because it "tied" an extension of credit to other transactions with the Bank. Given the nature of the defenses, the fact that discovery had to be taken in several states, and the fact that this is a $6 million case, the district court was entitled to conclude that 890 hours of work leading to a total bill of about $100,000 was not excessive.

 Finally, we agree with the district court that it is immaterial whether all of the expenses sought in this case would be taxed as "costs" under Fed.R.Civ.P. 54(d). The note and guaranty allow the recovery of "all expenses" and "all costs of collec-

tion." The principal expense in question is $2,606.86, the cost of travel to New Mexico to take the Borrowers' depositions. (The Bank represents that they refused to be deposed anywhere else.) This is a legitimate expense of collecting on the note, which the Bank must recover if it is to be made whole. The district court was entitled to award this and the other contested items.

Appeals No. 84–2037 and 84–2232 are dismissed for want of jurisdiction. The award of attorneys' fees, the only question properly presented by appeal No. 84–2737, is affirmed.