**Anthony KNEPPER, Plaintiff,**

v.

**AUTOMOTION, INC., Defendant.**

No. 90 C 842.

United States District Court,
N.D. Illinois, E.D.

Feb. 14, 1992.

Richard J. Witry, McCarthy, Duffy, Neidhart & Snakard, Thomas Stephen Moore, Law Offices of Thomas S. Moore, Chicago, Ill., for plaintiff.

Bruce Craig Spitzer, Christopher A. Kreid, Gorham, Metge, Bowman & Hourigan, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff sued defendant in early 1990, claiming a violation of COBRA and ERISA. The COBRA claim was settled for $11,228.15, including attorneys' fees attributable to that claim. The parties could not, however, resolve their differences respecting the ERISA claim, although they came close, and that claim proceeded to trial. This court found for the plaintiff after a less than three-day trial and thereafter entered judgment for him in the amount of $15,066.58. Plaintiff now seeks $43,075.25 in attorneys' fees and $3,977.10 in taxable costs. Defendant does not believe that an award of substantial attorneys' fees is appropriate in this case and disputes some of the costs.

■ We turn first to the applicable standards respecting fees. Some have treated fees under ERISA, 29 U.S.C. § 1132(g)(1), as akin to § 1988 fees, ordinarily available to prevailing plaintiffs in the absence of special circumstances. See, e.g., Smith v. CMTA–IAM Pension Trust, 746 F.2d 587, 589 (9th Cir.1984). That is not, however, the law in this circuit. In Janowski v. International Brotherhood of Teamsters Local No. 710 Pension Fund, 673 F.2d 931 (7th Cir.1982), vacated on other grounds, 463 U.S. 1222, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983), the court adopted a set of factors considered important by other courts:

> It is equally well-settled that in determining whether an award of attorneys' fees in suits brought under ERISA is appropriate, courts have considered the following factors: (1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions.

*Id.* at 940. The court went on to say, at 941, that the "need for awarding statutorily authorized attorney's fees to encourage enforcement of the Act is not so compelling that the discretionary provision should be construed as virtually mandatory."

The court followed that five-factor test in subsequent cases, but, two years later, in *Bittner v. Sadoff & Rudoy Industries,* 728 F.2d 820 (7th Cir.1984), it articulated a somewhat different approach even though it referred favorably to the five factors. In *Bittner,* the defendant was the prevailing party. The court there noted that the *Janowski* factors were oriented toward a case where the plaintiff prevailed and that the five factors were not necessarily the only test. Observing that prevailing plaintiffs and defendants are both entitled to seek ERISA fees, the court turned to the Equal Access to Justice Act as a useful analogy—a prevailing party is entitled to fees unless the opposing parties' position was substantially justified or special circumstances make an award unjust. That creates, according to the court, "a modest presumption ... in favor of awarding reasonable attorney's fees to the winning party, plaintiff or defendant, unless the loser's position, while rejected by the court, had a solid basis—more than merely not frivolous, but less than meritorious." *Id.* at 830. That, the court said, is an "intermediate position between automatic fee shifting (or nearly automatic, as in the Civil Rights Attorney's Fees Awards Act) and the common law position which allows shifting only against the frivolous litigant." *Id.* at 830.

The First Circuit has read *Bittner* as espousing a five-factor test if the plaintiff prevails and a "substantially justified" standard if the defendant prevails, and it rejected the distinction, believing that uniform application of the five factors, being plaintiff-oriented, built in a slight but appropriate bias for the protection of plan participants. *Gray v. New England Tel. & Tel. Co.,* 792 F.2d 251 (1st Cir.1986). But *Bittner* did not rest upon such a distinction, and the Seventh Circuit has since made it clear that it regards the five factors and the "substantially justified" standard as not dissimilar approaches to

what should not be dissimilar results. *Meredith v. Navistar Int'l Transp. Corp.*, 935 F.2d 124, 128 (7th Cir.1991); *Tesch v. General Motors Corp.*, 937 F.2d 359, 362–363 (7th Cir.1991); *Production & Maintenance Employees' Local 504 v. Roadmaster Corp.*, 954 F.2d 1397 (7th Cir.1992).

Where does that leave us? We believe that this court has substantial discretion; that analysis of the five factors is an appropriate starting point; that we should consider any other factors that bear upon the appropriateness of awarding fees in the circumstances; that we must assess the reasonableness of the defendant's position, which, of course, necessarily requires an assessment of the plaintiff's countervailing position; and that there is a slight bias in favor of awarding fees. Given the posture of the parties during the litigation, is it fair to award fees and, if so, how much?

■ Here the defendant terminated the plaintiff after he had been disabled for an extended period and at a time when it was uncertain whether or when he could return to work. He was then receiving and continued thereafter to receive disability benefits under the company plan. As it turned out, plaintiff was eventually able to return to employment and obtained a comparable job elsewhere. There was a period, however, during which plaintiff could have worked, prior to his new employment, and he would have earned more than his disability benefits. The defendant, however, faced with escalating insurance costs and wishing to change carriers, terminated plaintiff and manipulated his termination date to avoid reporting to the new carrier with which it was negotiating the adverse expense experience it had as a result of plaintiff's disability. We concluded that defendant might well have continued to carry plaintiff as an employee, hoping he could thereafter return, but for its desire to minimize insurance costs, although there was no dispute that it could have terminated plaintiff and replaced him with another if its purpose had been to get necessary work done.

That is bad faith of sorts, and it is the basis for the defendant's culpability. De-fendant did end up with a significantly lower insurance expense, a reduction considerably greater than the amount at stake in this lawsuit. There is nothing to suggest that defendant cannot pay any award. We have no doubt, as well, that an award will cause defendant to think twice before manipulating its experience reporting again, although the likelihood that a similar situation will arise again is remote and the lawsuit itself probably has driven the lesson home. Other covered employees were not benefited—this was a single and somewhat unique claim.

The relative merits of the parties' positions raise a separate concern. We believe that defendant's opposition to any relief for plaintiff was not substantially justified. But plaintiff was seeking not $15,000 but well over $130,000, and defendant's opposition to a claim of that size was substantially justified. We are not critical of an advocate's zeal to do the best he can for his client, but we do not believe that all time expended in those circumstances can be relied upon to determine reasonable fees to vindicate claims against opposition that was not substantially justified. Defendant does not quarrel with the rates requested, and neither do we. While expressing unhappiness at the small number of hours attributed to non-ERISA work, and questioning plaintiff's interest in what it considered to be over-expansive discovery (plaintiff largely acquiesced in defendant's objections at the time), defendant does not point out hours that could be reasonably eliminated if this were a civil rights case fee award. We are left, though, with a firm conviction that it would not be appropriate to call upon defendant to pay all the fees, which are considerable, in what was, after all, a short, rather modest, case. We note that the pretrial order went through eight drafts, that over 100 hours were expended in the month prior to the last day of trial, that the trial lasted about 2½ days, that it was a bench trial, and that one witness, an insurance expert, really was not necessary. Again, we do not quarrel with the notion of aggressive advocacy; the issue is at whose expense.

Plaintiff is entitled to a fee award. We recognized that his attorney's time expenditure and the ultimate recovery together, on the eve of trial, were substantially greater than defendant's then offer, and that a trial to judgment after extensive discovery is an expensive exercise even under the best of circumstances. We conclude, however, that there should be some reduction for the reasons stated, and we believe that reduction should be approximately one-third. We award fees in the amount of $28,500.

That still leaves the issue of costs. Plaintiff seeks $3,977.10. Plaintiff objects to half of copying costs of $412.50, claiming that two copies was one copy too many. It claims plaintiff unnecessarily spent $649.45 to subpoena from others documents defendant had already produced. It complains that $490 in other photocopying costs was excessive. It contends that Janet Olson's deposition was unnecessary and that there is no justification for a $54 accelerated rate charge on another; and it objects to certain witness fees. Plaintiff, in his Reply, has explained the reasons for the charges, except for the $54 acceleration, and this court is satisfied with those explanations. We deduct $54 and award costs of $3,923.10.