WELLFORD, Circuit Judge.
This case raises serious questions concerning the attempted termination of certain insurance benefits under a welfare benefit plan for retired employees by an employer.in the process of reorganization in bankruptcy. The benefits in question were not the subject of any collective bargaining agreement. There is involved in this controversy the application of the Employee Retirement Income Security Act of 1974 (“ERISA”), as amended, 29 U.S.C. §§ 1001-1461, and the interpretation of an “assumption and assignment” agreement by a third party involved in the controversy but not in the bankruptcy proceedings. Plaintiffs are former employees and spouses of deceased former employees (hereinafter, “retirees”) of White Farm Equipment Company (“White Farm”). Seeking recovery and reinstatement of welfare benefits they claim were “vested” and nonter-minable, retirees sue their former employer, White Farm; the White Motor Corporation Insurance Plan for Salaried Employees (“the Plan”), a nonfunded, noncontributory [1] welfare benefit plan which provided life, health, and welfare insurance, prescription drugs, dental care, and hearing aid benefits to retirees and eligible dependents; White Motor Corporation (“White Motor”),[2] the original parent of White Farm; T.I.C. Investment Company (“TIC”), the purchaser, through a subsidiary, of the capital stock of White Farm from its original parent White Motor; and Equitable Life Assurance Society of the United States (“Equitable”), insurance underwriter of the Plan.
The bankruptcy court entered summary judgment in favor of defendants in September 1982. In re White Farm Equipment Co., 23 B.R. 85 (Bankr.N.D. Ohio 1982). The retirees appealed the bankruptcy court’s award to the United States District Court for the Northern District of Ohio. On September 20, 1984, that court, the Honorable Ann Aldrich presiding, reversed the bankruptcy court and entered partial summary judgment as to liability in the retirees’ favor. In re White Farm Equipment, 42 B.R. 1005 (N.D. Ohio 1984). The court ordered White Farm and TIC to reinstate the retirees’ benefits retroactive to May 1, 1981, and enjoined the termination of any of the retirees’ benefits under the Plan. Judgment on that order was entered by order of the court dated October 4, 1984. In this consolidated appeal, defendants White Farm and TIC, as well as Grigs-by, Trustee for White Motor, appeal this judgment. Jurisdiction of this interlocutory appeal is predicated on 28 U.S.C. § 1292(a)(1).
I.
1. Background
Formed in 1969 by the merger of two wholly-owned subsidiaries of White Motor, White Farm has historically been engaged in the manufacture and distribution of *1188 farm equipment and materials-handling equipment. During April 1980, White Farm suspended its manufacturing operations in the face of lagging sales and insufficient working capital.
On September 4, 1980, White Farm voluntarily petitioned for reorganization pursuant to Chapter 11 of the Bankruptcy Reform Act of 1978. (On the same date, White Motor and four other of its wholly-owned subsidiaries also voluntarily petitioned for reorganization due to severe financial difficulties.) The case now on appeal before this court is an adversary proceeding arising out of White Farm bankruptcy reorganization proceedings.
On December 19, 1980, in a transaction approved by the bankruptcy court, White Motor sold White Farm to White Farm USA, Inc. (“WF USA”), a wholly-owned subsidiary of TIC. WF USA entered into an agreement with White Motor entitled “Assignment and Assumption of Liabilities,” under which it assumed, under certain conditions, White Motor’s obligations to White Farm employees and retirees under the welfare benefit plan; the meaning of this agreement is at issue in this proceeding. On the same date, the president of White Farm sent a letter to the company’s retirees (the plaintiffs in this action) advising them of the purchase and that their “retirement benefits will continue.”
White Farm continued funding the retirees’ welfare benefits for the next few months, but on March 31, 1981, it notified the retirees by letter that the Plan would be discontinued effective May 1, 1981, and that identical coverage would be made available on a fully contributory basis at group rates.
The only documentary evidence of the terms of the Plan relating to retiree insurance benefits are three summary booklets issued by White Farm to its employees and retirees describing the contents of the Plan. No formal Plan document was found or could be produced.
The 1970 booklets are organized into four parts: (I) the certificate of insurance, (II) a description of all insurance coverages then provided excepting long term disability coverage, (III) noncontributory long term disability coverage, and (IV) contributory long term disability coverage. At the conclusion of Part II, under the heading of “GENERAL INFORMATION”, the following appears:
WHEN INSURANCE TERMINATES Your insurance terminates when you leave our employ, when you are no longer eligible or when the group policy terminates, whichever happens first.
(Emphasis added).
Protection after termination
B. If your Group Life insurance terminates because the Group policy is terminated or amended, ... you may also make application to convert your Group Life insurance to an individual Life insurance policy____
(Emphasis added).
Protection After Termination of Survivor Income Benefits
B. If you die within 31 days following termination of insurance because of termination of your employment in the class or classes of employees insured under the Group Policy, or because the Group policy is terminated or amended, Survivor Income benefits will be payable if you had remained insured until your death____
(Emphasis added).
MODIFIED BENEFITS AFTER TERMINATION OF INSURANCE
If a person’s insurance terminates due to termination of the Major Medical Expense Insurance or its amendment to terminate the class of insured person of which such person is a member, all Major Medical Expense benefits will cease on the date of such termi-nation____
(Emphasis added).
In the 1978 booklet the following language was found:
*1189 13. CONTINUANCE OF THE PLAN: The Company fully intends to continue your plans indefinitely. However, the Company does reserve the right to change the plans, and, if necessary, discontinue them. If it is necessary to discontinue the Pension Plan, the assets of the Pension Fund will be used to provide benefits according to the Plan document.
(Emphasis added).
2. Proceedings in the Bankruptcy Court
On June 29, 1981, the White Farm retirees commenced this adversary proceeding in the bankruptcy court against White Farm, the Plan, White Motor, TIC, and Equitable, alleging breach of contractual and fiduciary duties under the Plan in violation of ERISA and seeking (1) a declaratory judgment that the retirees’ claim under the Plan is valid under ERISA and should be allowed as a claim in bankruptcy under 11 U.S.C. § 502, and (2) an injunction requiring White Farm, White Motor, and TIC to reinstate retroactively, and to continue to fund, the full welfare benefits provided under the Plan.
On July 14, 1981, the plaintiff retirees filed a motion for a temporary restraining order and preliminary injunction requiring retroactive reinstatement and continued funding of the retirees’ welfare benefits. At a preliminary hearing held on July 23, 1981, “[t]he Court and the parties agreed to attack as a threshold question the legal sufficiency of the Retirees’ claims.” 23 B.R. at 88-89.
On the same date as the preliminary hearing, responses to the plaintiff retirees’ motion were filed by White Farm, and the White Farm Equipment Company Official Creditors Committee filed a motion to intervene, which latter motion was granted. White Farm and TIC then filed motions to dismiss the plaintiff retirees’ complaint. On August 13, 1981, the bankruptcy court, after briefs were filed, directed a hearing on the motion to dismiss. On August 31, 1981, a letter from plaintiff retirees’ counsel to all counsel of record and the bankruptcy court clerk was filed which indicated that plaintiffs intended to file a motion for partial summary judgment to be heard at the hearing on the motion to dismiss scheduled for September 18, 1981. It was not until September 14, 1981, however, that plaintiffs filed their motion for partial summary judgment, supported by a statement of facts as to which plaintiffs asserted “there can be no genuine issue.”[3]
Based on all the evidence before it, the bankruptcy court granted defendants’ motion (treated by the court as a motion for summary judgment under Bankruptcy Rule 712(b) and Fed.R.Civ.P. 12(b)) and denied plaintiffs’ motion for partial summary judgment. The bankruptcy court found that there was no genuine issue as to the existence or construction of the Plan’s termination clause, since the documentary evidence “speak[s] with one unambiguous voice” in establishing White Farm’s unqualified right under the terms of the Plan to amend or terminate the Plan, and thus found that summary judgment was appropriate. 23 B.R. at 96-98. Although the bankruptcy court concluded that “Congress clearly intended that, as respects ERISA cases, federal rules of decision are to apply exclusively,” id. at 101, the court rejected the plaintiffs’ suggestion that it adopt, as part of “federal common law,” a pre-ERISA rule of Ohio law stated in Sheehy v. Seilon, 10 Ohio St.2d 242, 243, 227 N.E.2d 229 (1967), which precluded the termination of retiree benefits as having “vested” at retirement, notwithstanding a reserved contractual power of termination to the contrary, 23 B.R. at 98-104. The bankruptcy court thus found that the defendants breached no contractual or fiduciary duty *1190 under ERISA by exercising their reserved power of termination. Id. at 103-04.
In view of the bankruptcy court decision, plaintiffs’ claims were not recognized as those of unsecured creditors. There was no effort, however, by plaintiffs to seek to preclude or prevent the implementation of the proposed 65 percent payment noted by the bankruptcy court to other unsecured claimants whose claims were filed and proved in bankruptcy court. This reorganization plan was thus apparently approved during the two-year interim after the bankruptcy court decision and before the district court acted on the appeal.
3. Proceedings in the District Court
Following the entry of judgment for defendants in the bankruptcy court, plaintiffs filed a notice of appeal to the district court. Nearly two years later, on September 20, 1984, the district court issued its decision reversing the bankruptcy court’s grant of summary judgment in favor of the defendants and declaring that the termination of the welfare benefit plan violated ERISA under federal common law principles. In re White Farm Equipment Co., 42 B.R. 1005, 1021-22 (N.D. Ohio 1984). The district court thus entered partial summary judgment in favor of the plaintiff retirees, ordered White Farm and TIC to reinstate the retirees’ benefits retroactively, and enjoined termination of any rights possessed by retirees under the Plan.
Judge Aldrich initially concluded that Congress’ exclusion of welfare benefit plans from ERISA’s vesting requirement did not amount to “an express endorsement of unfettered unilateral termination of such plan,” as she suggested the bankruptcy court had ruled. 42 B.R. at 1011-13. She then concluded that because ERISA was purportedly “silent” on this issue, a “federal common law” rule governing the vesting of welfare benefit plans must be developed by looking to state law. Id. at 1014-16.
Relying on what she characterized as “the modern view” of retirement benefits, Judge Aldrich then concluded that welfare benefits “vest upon retirement” and cannot be terminated even in the face of plan language which unequivocally authorizes such action. Id. at 1016-19. Accordingly, even if the summary Plan booklets had reserved a clear right of termination, the district court found that the “federal common law” of ERISA prevented White Farm from exercising such right as to the retirees, and that the retirees “were entitled to a declaratory judgment as to their rights under the Welfare Benefit Plan and partial summary judgment on the issue of liability.” Id. at 1019.
In addition, the district court went on to consider the bankruptcy court’s finding that the Plan contained an unambiguous termination clause permitting the benefit cutoff. Judge Aldrich found that the language relied upon by the bankruptcy court was ambiguous. Id. at 1019-21. She thus concluded that even if the terms of the Plan were material to “the legal issues in this case”, the bankruptcy court should have allowed further discovery and held a hearing to resolve “the factual disputes” and “determine if the Plan included a termination clause.” Id. at 1021.
II.
The central issue raised in this appeal from the district court order is whether under ERISA an employer may lawfully exercise a reserved power to terminate an employee welfare benefit plan for retired nonunion employees.
We have decided a number of cases under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and § 502(a) of ERISA, 29 U.S.C. § 1132(a), construing the terms of collective bargaining agreements concerning retirees’ post-employment welfare benefits. See Weimer v. Kurz-Kasch, Inc., 773 F.2d 669 (6th Cir.1985); Policy v. Powell Pressed Steel Company, 770 F.2d 609 (6th Cir.1985) (action specifically under ERISA and LMRA); International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and Local 784 v. Cadillac Malleable Iron Company, Inc., 728 F.2d 807 (6th Cir.1984); International Union, United Automobile, *1191 Aerospace, and Agricultural Implement Workers of America and Local 134 v. Yard-Man, Inc., 716 F.2d 1476 (6th Cir. 1983), cert. denied, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984); Upholsterers’ International Union of North America, AFL-CIO v. American Pad & Textile Company, 372 F.2d 427 (6th Cir.1967). These cases concern themselves with particular collective bargaining agreements and concern union employees, unlike the instant situation. We look in this case to an appropriate federal rule of decision to decide the issue here presented.
First, we look to basic contract law. Despite any technical legal problems once present in the area of employment contract law, it is settled law that an employer and an employee may contract for post-employment welfare benefits, and this court must, in this case as in Yard-Man and the other collective bargaining agreement cases, interpret the contract’s terms. See In; re Erie Lackawanna Railway Co., 548 F.2d 621, 625-27 (6th Cir.1977).
Second, we look to federal law to see if any express or implicit statutory command or other federal policy mandates a federal common law rule limiting the right of an employer to exercise after retirement a reserved right of termination of employee welfare benefits. The district court endorsed such a rule, thus “vesting” employee welfare benefits automatically at retirement, regardless of the contractual terms. 42 B.R. at 1011-19. The bankruptcy court had rejected such a rule. 23 B.R. at 102-04. The line of collective bargaining cases above mentioned defer to the contractual terms set by the parties, with no such rule of “federal common law” overlaying the parties’ expressed intent.
One area of agreement between the bankruptcy court and the district court was that ERISA mandates the application of federal rules of decision in cases involving employee welfare benefit plans. 23 B.R. at 101; 42 B.R. at 1011-12, 1014-15. The Plan at issue in this case is clearly an “employee welfare benefit plan” as defined by ERISA, ERISA §§ 3(1), 3(3), 29 U.S.C. § 1002(1), 1002(3), and thus is subject to and governed by ERISA, ERISA § 4(a), 29 U.S.C. §§ 1003(a). ERISA’s broad preemption provision makes it clear that Congress intended to establish employee benefit plan regulation as an exclusive federal concern, with federal law to apply exclusively, even where ERISA itself furnishes no answer. ERISA § 514, 29 U.S.C. § 1144; 120 Cong. Rec. S15751 (daily ed. Aug. 22, 1974) (remarks of Sen. Javits), quoted in 23 B.R. 101, 42 B.R. 1015; Wayne Chemical, Inc. v. Columbus Agency Service Corp., 426 F.Supp. 316, 322 (N.D.Ind.), aff'd as modified, 567 F.2d 692 (7th Cir.1977); Northeast Department ILGWA Health and Welfare Fund v. Teamsters Union Local No. 229 Welfare Fund, 764 F.2d 147 (3d Cir. 1985). Thus, we must determine the appropriate federal rule of decision governing the termination of nonunion retiree welfare benefit plans where the employer pays the entire cost of benefits.
The district court noted that, in fashioning a federal rule of decision, we must first look to the statute itself. 23 B.R. at 102. There is an express statutory exclusion of welfare plans from the stringent minimum vesting, participation, and funding standards imposed on pension plans, ERISA §§ 201(1), 301(a)(1), 29 U.S.C. §§ 1051(1), 1081(a)(1), and also an exclusion of welfare benefits from the definition of “accrued benefits” in Treasury regulations, 26 C.F.R. § 1.41(a)-7(a)(ii) (1981), promulgated under ERISA § 1053(a), 26 U.S.C. § 411. The bankruptcy court read these provisions to demonstrate that ERISA clearly exempts welfare benefit plans from any affirmative requirement of vesting. 23 B.R. at 102-03. The bankruptcy court also relied upon ERISA § 403(d)(2), 29 U.S.C. § 1103(d)(2), which provides for the manner of distribution of welfare plan assets upon plan termination. Id. at 103. By so providing, the bankruptcy court reasoned, this section “expressly permits plan termination” and announces the “considered judgment [of Congress] that welfare plans are to remain unregulated in the aspect of vesting, including post termination.” Id. *1192 Although the conscious exclusion of welfare plans from the complex and finely-tuned compromise provisions on vesting, participation, and funding applicable to pension plans and the provision for distribution of welfare plan assets on termination counsel strongly against imposition of mandatory vesting standards through case law, we are not persuaded that Congressional silence mandates the conclusion reached by the bankruptcy court on this issue.
Thus, we are not in disagreement with the district court’s conclusion “that no leap of logic transforms Congress’ exclusion of welfare benefit plans from various ERISA requirements into an express endorsement of unfettered unilateral termination of such plans.” 42 B.R. at 1013. It is the district court’s further conclusion that a federal rule of decision should be created barring termination of welfare benefit plans, regardless of any clear, express contractual termination provisions, which gives us pause. Id. at 1016-19.
The cases relied upon by the district court provide little support for the per se rule adopted by the district court regarding vesting of benefits in this situation. In Wayne Chemical, Inc. v. Columbus Agency Service Corp., 426 F.Supp. 316, 322 (N.D.Ind.), aff'd as modified, 567 F.2d 692 (7th Cir.1977), the Seventh Circuit concluded that governing Indiana law with respect to the transaction was not preempted by ERISA, and thus declined to announce a federal common law rule. All the state law cases cited by the district court to support its absolute vesting rule represent pre-ERISA state case law and only one of these cases, a 1967 Ohio case, concerns retiree welfare benefits or purports to extend their rule beyond pension benefits. See Hoefel v. Atlas Tack Corp., 581 F.2d 1, 4 (1st Cir.1978) (applying Mass, law; citing cases from other states), cert. denied, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979); Cantor v. Berkshire Life Ins. Co., 171 Ohio St. 405, 171 N.E.2d 518 (1960); Sheehy v. Seilon, Inc., 10 Ohio St.2d 242, 227 N.E.2d 229 (1967) (welfare benefits); Luli v. Sun Products Corp., 60 Ohio St.2d 144, 398 N.E.2d 553, 555 (1979) (pre-ERISA case). Thus the district court’s reliance on the “modern view” regarding termination of retiree pension benefits under state common law — now superseded by ERISA — is misplaced.
The district court also purports to rely upon In re Erie Lackawanna Railway Co., 548 F.2d 621 (6th Cir.1977), and International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America and Local 134 v. Yard-Man, Inc., 716 F.2d 1476 (6th Cir. 1983), cert. denied, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984). In Lackawanna, this court affirmed the district court’s determination that noncontract retirees’ claims against their bankrupt former employer for future payments of group life insurance premiums were not entitled to administrative priority. 548 F.2d at 622, 631. The court applied Ohio law, including Sheehy v. Seilon, Inc., supra, to determine that the retirees had legally enforceable claims, notwithstanding a reserved power of termination in the employer. Id. at 625-27. This case arose prior to ERISA’s effectiveness, however, and we are not bound to follow the Ohio law construed there.
In Yard-Man, we held that the intent of the parties, as primarily evidenced by the collective bargaining agreement, controls the continuation of retiree welfare benefits beyond the agreement’s termination:
The District Court properly recognized that whether retiree insurance benefits continue beyond the expiration of the collective bargaining agreement depends upon the intent of the parties. Clearly the parties to a collective bargaining agreement may provide for rights which will survive termination of their collective bargaining relationship. [Citation omitted.] The parties may, for example, provide retiree insurance benefits which survive the expiration of the collective bargaining agreement. [Citations omitted.] Any such surviving benefit must necessarily find its genesis in the collective bargaining agreement. [Citations omitted.]
716 F.2d at 1479.
In the absence of clear precedent, we find that the statutory scheme of *1193 ERISA, though silent on this issue, counsels against the imposition by this court of an absolute rule effectively requiring mandatory vesting at retirement of retiree welfare benefits under these circumstances. The crucial difference under ERISA between retiree pension benefits and welfare benefits was discerned in Sutton v. Weir-ton Steel Division of National Steel Corp., 724 F.2d 406, 410-11 (4th Cir.1983), cert. denied, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984). A number of district courts have also rendered holdings implicitly rejecting the holding of the district court in this case. Levy v. Lewis, 79 Civ. 6080 (S.D.N.Y. Feb. 22, 1980) (unpublished), aff'd on other grounds, 635 F.2d 960 (2d Cir.1980); Eardman v. Bethlehem Steel Corp. Employee Welfare Benefit Plans, 607 F.Supp. 196 (W.D.N.Y.1984), appeal dismissed, 755 F.2d 913 (2d Cir.1985) (no opinion; “dismissed on procedural grounds”); Petrella v. N.L. Industries, 529 F.Supp. 1357, 1365-66 (D.N.J.1982). Congress expressly exempted employee welfare benefit plans from stringent vesting, participation, and funding requirements. Congress recognized the differences between welfare benefit plans and pension plans, and we discern no basis for finding mandatory vesting in ERISA of retiree welfare benefits. We believe that the legislature, rather than the courts, should determine whether mandatory vesting of retiree welfare benefits is appropriate.
We conclude, moreover, that the parties may themselves set out by agreement or by private design, as set out in plan documents, whether retiree welfare benefits vest, or whether they may be terminated. In construing such agreements, courts may draw inferences or make presumptions as this court has done in construing collective bargaining agreements providing welfare benefit plans. See Weimer v. Kurz-Kasch, Inc., 773 F.2d 669 (6th Cir.1985); Policy v. Powell Pressed Steel Company, 770 F.2d 609 (6th Cir.1985) (action specifically under ERISA and LMRA); International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and Local 784 v. Cadillac Malleable Iron Company, Inc., 728 F.2d 807 (6th Cir.1984); International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and Local 134 v. Yard-Man, Inc., 716 F.2d 1476 (6th Cir. 1983), cert. denied, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984); Upholsterers’ International Union of North America, AFL-CIO v. American Pad & Textile Company, 372 F.2d 427 (6th Cir.1967).
III.
The district court held that an employer may not invoke an unambiguous termination clause to cut off the welfare benefits of a properly retired employee. 42 B.R. at 1016-19. It was therefore not necessary for purposes of that decision to review the bankruptcy court’s factual finding that the documentary evidence clearly and unambiguously established the defendants’ unqualified right to amend or terminate the Plan. We have decided that the district court’s ruling, under which the existence and scope of a termination clause in this type of case would be immaterial, is erroneous, but we must still review the bankruptcy court’s factual finding, which the district court suggested was erroneous.
The documentary evidence submitted in this case, which did not include the “Plan document” itself, consisted of various descriptive brochures. These were analyzed by the district court. She found this evidence does not unambiguously establish the existence or scope of a termination clause. 42 B.R. at 1019-21. We agree. Because we believe the documentary evidence is subject to interpretation to ascertain its meaning and intent, we conclude that the bankruptcy court also erred in granting defendants’ motion for summary judgment. There remains the problem of determining intent in light of all the circumstances bearing upon this issue.
IV.
In sum, we hold that the district court erred in ruling that an employer may not terminate, as a matter of “federal common law” under ERISA, the welfare benefits of *1194 retired employees. We also hold that the bankruptcy court erred in concluding that the termination provisions and their applicability to the benefits in controversy were clear and unambiguous as a matter of law. We must, therefore, remand the case for further proceedings to the bankruptcy court.
On remand, the bankruptcy court must consider whether, given the posture of the various proceedings in bankruptcy that have taken place relative to this case and the alleged assignment and assumption of liabilities agreement involving defendant TIC, what appropriate remedy, if any, remains available for plaintiff retirees. The bankruptcy court must also consider whether the unusual remedy of injunctive relief should be awarded to potential claimants in a bankruptcy proceeding in the posture of this case.
Accordingly, the judgment of the district court is reversed, the mandatory injunction is dissolved, and the case is remanded to the bankruptcy court for further proceedings consistent with this opinion. In view of the delays already experienced in the disposition of these important issues, we urge that a decision be expedited in that court.

. These terms describe a plan under which benefits are funded solely by the employer, usually out of current operating income.

. Defendant John T. Grigsby is the Trustee in bankruptcy of and successor in interest to defendant White Motor.

. Plaintiffs’ motion for partial summary judgment, which was denied on the merits by the bankruptcy court and granted on the merits by the district court, was filed a few days (less than ten days) prior to the scheduled hearing, as required by Bankruptcy Rule 756 and Fed.R. Civ.P. 56(b), and thus may not have been properly before the bankruptcy court or the district court. We need not reach this procedural issue, however, because of the disposition we make on the other issues before us.