LOCAL 836 OF the UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), et al., Plaintiffs,

v.

ECHLIN, INC. and Midland Brake, Inc., Defendants.

No. 84–CV–8357–FL.

United States District Court, E.D. Michigan, S.D. at Flint.

Dec. 16, 1986.

On Motion for Clarification Sept. 22, 1987.

Roger J. McClow, Southfield, Mich., for plaintiffs.

M. Jay Whitman, Associate Gen. Counsel, Intern. Union, UAW, Detroit, Mich., James Allan Smith, David H. Grigereit, Atlanta, Ga., Clark Shanahan, Owosso, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Pending are four separate motions by defendant Echlin. The first two are summary judgment motions under Rule 56, Fed.R.Civ.P., seeking dismissal of Complaint Counts I and II. Also filed were motions to strike the jury demand and the prayer for mental distress damages.

Defendants are successors to Midland-Ross which had negotiated the 1981–1984 collective bargaining agreement (CBA) with the plaintiff union. Defendants purchased the company from Midland Ross on August 31, 1982, in the middle of the contract period. When the contract expired, the defendants closed the plant.

At issue in the case is the obligation of defendants to provide retirement benefits to those persons who retired during the contract period between the August 31, 1982 acquisition by the defendants and the July, 1984 plant closure. The summary judgment motions as to each count simply litigate the duty of defendants to provide certain health and welfare benefits to the named subset of retirees, i.e., those who retired after the acquisition. Count I alleges a breach of the contractual duty under the CBA based on § 301 of the Labor Management Relations Act of 1947, 29 U.S. C. § 185. Count II is based on a claimed violation of § 502 of the Employee Retirement Income Security Act (ERISA), 29 U.S. C. § 1001, *et seq.*

### I  *Count I—Summary Judgment Motion Relating Thereto.*

The defendants' theory is that irrespective of what the extrinsic evidence relating to contractual intent may show, the language of Article 22 of the CBA is unambiguously "durational" in its delineation of the entire benefit package. Being unambiguous, defendants claim that as a matter of law, the Court is precluded from even considering plaintiffs' proffered factual material going to the parties' intent that the contested benefits were to be vested so that they survive the term of the collective bargaining agreement. Defendants claim that nothing outside of the agreement can be considered since the duration of these benefits was specifically stated to be for the period of the contract. This claim is based on Article 22, which reads as follows (pertinent part only):

> The group insurance schedule of benefits will be continued during the period of this agreement with the changes agreed to being placed in effect on the dates agreed and as outlined below:
>
> . . . .
>
> Subject coverage is further extended to the surviving *spouse* of deceased retired employees until eligible for Medicare ("fill") policy. Surviving spouse must have attained the age of 55.

The defendants go further, however, and contend that even if the contract language is ambiguous, a consideration of the extrinsic evidence dispels any triable issue of fact as to the parties' contractual intent. While defendants have amassed some evidence supporting their view, the extrinsic evidence does not preclude any genuine issue of fact as to the parties' contractual intent.

The question of whether this Court may look to contraindicative extrinsic evidence adduced by plaintiffs in interpreting an unambiguous provision of a CBA is easy to pose, but difficult to answer in view of recent Sixth Circuit pronouncements (some of which may be dicta) which approve this practice. To be complete, these cases will be discussed even though it is unnecessary

to consider this question since the Court finds the language *is* ambiguous and thus extrinsic evidence may be considered under traditional principles.

### A. Whether the Language of Article 22 is "Ambiguous".

■ Plaintiffs contend the language *is* ambiguous because the provision above quoted which extends "subject coverage" to surviving *spouses* of deceased retired employees *until their Medicare benefits are triggered at age 65* (provided the spouse has attained the age of 55 years) implies that the health and welfare benefits were intended to be available to *retirees* as well, based on their *age*, and not keyed to contract expiration. In support of their major premise, plaintiffs point out that under Article 22, it would be possible for a surviving spouse, 55 years old in 1984, the last year of the contract, to receive pension benefits for 10 years beyond the life of the CBA, i.e., until she or he attained age 65. If retirement benefits are thus available to the spouse based on age, plaintiffs reason they are all the more available to retirees themselves. At any rate, say plaintiffs, this proves the preamble is not *absolutely* durational, is therefore ambiguous, and thus allows consideration of extrinsic evidence as to the intent of the contracting parties.

A traditional rule of construction of the "surviving spouse" language would hold it to be an exception to an absolutely durational preamble language. On the other hand, application of a rule of construction in itself implies some ambiguity. Otherwise a rule of construction is not necessary.

The more powerful argument supporting the claim of ambiguity is that the preamble purports not to limit the duration of benefits but rather the "schedule of" benefits that followed. It is obvious that the "schedule of" language is surplusage if it has no meaning independent of the term "benefits" only. In other words, as defendants have urged, "schedule of" benefits means the same as "benefits." Taking plaintiffs' interpretation, the durational preamble would limit the "schedule" to the life of the contract, but not the "benefits" *per se*. This is sufficient to conclude that an ambiguity exists.

### II Assuming the contract language is not ambiguous, does this preclude consideration of extrinsic evidence?

■ But even if the preamble relied on by Echlin is unambiguously "durational" as to retiree health and welfare benefits when interpreted in context with the whole of Article 22, is consideration of extrinsic evidence of a contrary intent precluded?

The leading case is *Intern. U. United Auto., Aero., Etc. v. Yard-Man,* 716 F.2d 1476 (6th Cir.1983). Footnote 1 presents a favorable view of considering extrinsic evidence.

> The parties presented no extrinsic evidence of intent in this case and *elected* to rely exclusively on the terms of their collective bargaining agreement ... On appeal, *Yard-Man* raised arguments based on economic considerations which were not part of the record before the District Court. These do not, therefore, constitute any part of our analysis. p. 1480.

In light of the *Yard-Man* holding that retirement benefits are *prima facie vested* so long as retirement *status* is maintained by the retiree, footnote 2 is also interesting.

> We agree with Yard-Man that traditional rules of contractual interpretation require a clear manifestation of intent before conferring a benefit or obligation. *See, e.g., Kellogg Co., [v. N.L.R.B.] supra,* 457 F.2d [519] at 524 [ (6th Cir. 1972) ]. We do not agree, however, that the duration of the benefits once clearly conferred is subject to this stricture.

In *Cadillac Malleable Iron,* 728 F.2d 807, the Sixth Circuit, relying on *Yard-Man,* emphatically approved the district court's consideration of the history of the parties' bargaining relationship, and "the testimony of the corporate secretary who maintained personnel records and customarily talked with each employee who was about to retire, and the testimony of various employees concerning their interviews with the Secretary." *Cadillac* at 809.

That court also stated that it is proper to consider the "context from which the collective bargaining agreement arose ..." p. 809.

Of course, *Cadillac* made no reference to the necessity for an ambiguity in the language of the CBA. Nevertheless, it is authority for the principle that extrinsic evidence may be considered, especially in light of this language from *Yard-man:*

> Many of the basic principles of contractual interpretation are fully appropriate for discerning the parties' intent in collective bargaining agreements. For example, the court should *first* look to the explicit language of the CBA for clear manifestations of intent ... The intended meaning of even the most explicit language can, of course, only be understood in light of the context which gave rise to its inclusion. p. 1479. (Underlining supplied.)

If "context" refers to the contract language only, then, of course, this is no authority for consideration of outside evidence. However, the treatment in *Cadillac Malleable,* with its explicit reference to later language in *Yard-Man* referring to the "context" in a way that clearly includes the "surrounding circumstances" of the bargain, leads to the conclusion that it is proper to look outside the four corners to determine intent.[1]

The outside evidence is in dispute, but does include the following:

1. The predecessor's officer (Bruce Engle) who negotiated the contract, on deposition said the benefits were "for the duration of the retiree, not the contract." (Part of Engle's deposition attached to plaintiff's responsive brief.)[2]

2. Marlene Dade of defendants' personnel department wrote letters to retirees assuring them that the benefits were "lifetime," and did not expire with the contract.

3. Midland Ross, defendants' predecessor, has continued to provide the benefits in issue to employees who retired prior to the sale to defendants' plant. This certainly is evidence of the contract's meaning to one of the original contracting parties and supports the denial of the motion.

The Court concludes that the motion as to Count I must be DENIED both because the contract language is ambiguous and because there is a genuine factual issue as to the intent of the parties.

### III  Count II—Summary Judgment Motion as to the ERISA Count.

■ The second Count, relating to plaintiff's claims under ERISA, was filed before the Sixth Circuit decided *In re White Farm Equipment Co.,* 788 F.2d 1186 (6th Cir. 1986) in which the court declined to hold that ERISA required mandatory vesting at retirement of retiree welfare benefits. Vesting of welfare benefits was held to be a matter between the parties as they may themselves set out by agreement or by private design as set out in plan documents.

But *White Farm* does not require the granting of the summary judgment as to Count II. Even though plaintiffs have no substantive ERISA rights to retirement benefits, if defendants were found liable *for breach of contract under* § 301, this would also make out an ERISA violation. In that event, attorney fees under ERISA may be authorized. On the other hand, the decision to *grant* summary judgment as to Count I would seem to require a similar disposition of Count II, since under *White Farm,* an ERISA claim in this case is at best derivative of a § 301 claim. While not entirely clear, it seems that plaintiff fairly

---

1. There is some Sixth Circuit law adduced by defendant in its memorandum which holds to the contrary of the proposition here urged. *See* Dkt. # 57, p. 17. *Local 783 v. General Electric,* 471 F.2d 751, 757–58 (6th Cir.1973).

The holding is squarely against the present Sixth Circuit law in the cases following *Yard-Man.* The *Yard-Man* line has substantially eroded the *General Electric* principle, at least in the retiree benefits context.

2. In defendant's memorandum in opposition to plaintiff's response to defendant's motion for summary judgment as to Count I, defendant cites portions of the Engle deposition tending to rebut the portion quoted in plaintiff's responsive brief. *Neither party has filed the entire deposition.* Dep. # 57.

concedes the derivative nature of Count II after *White Farm*.

Plaintiffs argue that a failure to pay retirement benefits due pursuant to a § 301 contract by itself establishes an ERISA claim based on the Sixth Circuit's statement in *White Farm* that a retiree insurance plan is "clearly an employee welfare benefit plan as defined by ERISA." Once a retiree insurance plan is established as *existing and vested* under the terms of the applicable CBA, the benefit is protected by ERISA as well as § 301.

Whether the breach of a CBA, which includes vested retirement pension benefits, constitutes without more a violation of ERISA, may yet be an open question. The *White Farm* case was remanded with instructions to the district court to undergo a *Yard-Man* analysis, but no indication was given as to whether ERISA would be necessarily violated by a finding of contract[3] breach other than the hint that the pension benefit plan was "clearly an 'employee welfare benefit' as defined by ERISA." 788 F.2d 1191. In any event, the motion should be DENIED due to the common fact question.

IV  *The Summary Judgment Motion as to Mental Distress Damages.*

█ In contending that mental distress damages are unavailable under ERISA, defendants place chief reliance on *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). That opinion holds that extracontractual damages are unavailable in an action brought against a Plan fiduciary under § 409(a).

Plaintiffs have properly distinguished this case by pointing out a footnote in the majority opinion which expressly limits the holding to § 409(a) cases and clearly indicates that it is not considering the question under § 502(a)(3) of ERISA. 473 U.S. at

139, n. 5, 105 S.Ct. at 3089, n. 5, 87 L.Ed.2d at 101, n. 5.

Defendant also relies on *Bittner v. Sadoff & Rudoy Industries, Inc.*, 728 F.2d 820 (7th Cir.1984). *Pokratz v. Jones Dairy Farms*, 771 F.2d 206, 210 (7th Cir.1985), *Hurn v. Retirement Trust*, 424 F.Supp. 80, 82 (C.D.Cal.1976), and *Light v. Blue Cross & Blue Shield*, 616 F.Supp. 558 (S.D.Miss. 1985), and *Sokol v. Bernstein*, 803 F.2d 532 (9th Cir.1986).

In *Bittner*, the Court stated:

There is no question that Bittner's claim of intentional infliction of emotional distress was indeed based on state law and not on ERISA. The only type of civil action under ERISA that may be brought in state court is an action by a participant or beneficiary 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.' ... The quoted language confers no right to sue for mental suffering caused by a violation of the terms of the plan. p. 825.

Thus, *Bittner* is not binding since it was clear dicta. Moreover, it does not purport to exclude mental damages sounding in and arising from a breach of contract; but only the "tort" claim of "intentional infliction of emotional distress" by firing him for asserting an ERISA claim.

*Pokratz* is distinguishable on the same ground as is the Supreme Court decision in *Russell*. 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96, *supra*. *Hurn v. Retirement Trust* contains the broad conclusion that ERISA "provides no cause of action for damages for emotional distress." 424 F.Supp. 80, 82. (C.D.Cal.1976). *Light v. Blue Cross & Blue Shield* follows *Bittner* and extends *Russell* to exclude all claims for emotional damages under ERISA, including those under § 502(a)(3).

---

**3.** It is noteworthy that *White Farm* involved no collective bargaining agreement, but a "welfare benefit plan" existing by virtue of an "assumption and assignment" agreement. This fact supports the view that a finding of breach of contract upon remand *per* the order of the *White Farm* court would have called into play rights

under ERISA, since § 301 is not in the picture. On the other hand, it may be that the remand instruction was merely intended to restrict plaintiffs to whatever rights they may have had by virtue of contract other than collective bargaining agreement.

In contending that mental distress damages are not available against an employer under § 301, defendant advances the argument that employers should be excluded from these types of damages because unlike unions, there is no fiduciary relationship between employers and employees. Defendant relies on *De Arroyo v. Sindicato De Trabajadores Packinghouse, AFL–CIO*, 425 F.2d 281 (1st Cir.1970), and *Richardson v. Communications Workers of America*, 443 F.2d 974 (8th Cir.1971).

The cases which distinguish employer liability for emotional damages from that of a union for the same do so on a tort theory reasoning that, since employers lack a common law duty, there can be no tort damages for breach. This, of course, ignores the option of granting emotional damages in consequence of a breach of contractual duty in general or specifically, a statutorily recognized contractual duty such as under § 301. In this regard, plaintiff relies on *Farmer v. ARA Services*, 660 F.2d 1096 (6th Cir.1981), in which plaintiffs claim the Court approved the apportionment of mental distress damages between the union and the employer in a § 301 action. 660 F.2d 1107. (*See* Dkt. # 52 at p. 13).

The plaintiffs' characterization of *Farmer* is not accurate. The larger quotation from which plaintiffs quoted at page 13 of plaintiffs' memorandum in opposition to defendants' motion is as follows:

Local 1064 has erroneously argued that damages for emotional and mental distress were improperly awarded to the plaintiffs. Damages for emotional and mental distress may be awarded for the union's breach of its duty of fair representation. Where, as in the present case, the union's breach of its statutory duty results also from its wrongful participation in the breach of contract or from the negotiation of discriminatory contractual provisions, then the union may be held jointly and severally liable with the employer or its liability for damages may be apportioned to the extent that it shares responsibility for the damage. Here, the district court offset plaintiffs' damages against Local 1064 by the amount each had received in settlement of her claims against the employer, so as to apportion damages between the employer and the union. (underlining added)

The portion underlined is the portion quoted by plaintiffs in their brief. There are several difficulties with plaintiffs' application of *Farmer* to the present case. *First:* The employer was not a party to this action. *Second:* Plaintiffs there sued the union for breach of Sections 9(a) and 8(b) of the Labor Management Relations Act of 1947, 29 U.S.C. § 158(b) and 159(a) (LMRA) and also under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. *Farmer* was neither a § 301 nor an ERISA case. The issue in *Farmer* was whether the damages were granted under Title VII under which emotional damages are not permitted; or under Sections 9(a) and 8(b) of LMRA as to which the emotional damages are allowed.

As indicated in the quotation, the amount paid by way of settlement by the employer was deducted from the damages rendered against the union. This, of course, made sense in *Farmer* because the limited damages allowed under Title VII are far smaller in scope than those under LMRA but are included within the damages allowed under LMRA. Title VII has back pay and possibly front pay components without emotional or compensatory damages. LMRA §§ 9(a) and 8(b) have the pay components and the emotional components.

It is in that sense and in that sense alone that damages were apportioned between the employee and union. The case is not authority for claiming emotional damages under § 301 or ERISA, and plaintiffs' statement on page 13 of their brief that "the court noted that the employer may also be liable for mental distress damages for breach of contract" is an error. It is doubtful that if the case had been settled by the union, the Court could simply deduct that amount from the employer's liability for the settlement included components for which the employer in *Farmer* was not liable.

The Court is persuaded by the reasoning and decision by my brother Enslen in *UAW v. Federal Forge, Inc.*, 583 F.Supp. 1350 (W.D.Mich.1984). Unfortunately, however, the Court is also convinced that the weight of authority is otherwise and that the Sixth Circuit would follow the weight of authority. Not being a free agent, the Court feels compelled to grant this motion.

## V *The Jury Trial Issue.*

In dealing with the issue as to whether a jury trial is appropriate, the Court must hearken back to basics because both parties appear to be able to make silk purses out of sow's ears. There is a difference between remedies which are equitable in nature and suits or claims directed to the equity jurisdiction of a court. A claimant can seek an equitable remedy but do so on the law side of the court. Likewise a claimant can seek an equitable remedy on the equity side of the court. Two obvious examples should suffice to make the point. A falsely states to B that he has a geologist's report that there is oil on his land. Based upon that misrepresentation, B buys the property for $100,000. Without the representation the property is worth $10,-000. B discovers the fraud and seeks the equitable *remedy* of rescission. On this theory he files suit, tenders a reconveyance of the land and seeks a judgment for $100,-000 plus interest. That suit is on the law side of the court and thus subject to a jury trial. Remember, however, rescission is still generally considered an equitable remedy. The second example is presented where B tells A that B has had a geological report done which reveals that there is no oil on the property. Accordingly, A, relying on the representation which was false because B's report really showed a 98% possibility of oil on the property, reduces the price from $100,000 to $10,000. When A discovers the fraud, he sues B seeking rescission tendering the return of the $10,-000 plus interest and seeks the return of the property. He seeks from the court an order requiring a reconveyance or an order transferring the property from B to A. A thus is seeking the equitable remedy of rescission by seeking equity relief available only on the equity side of the court. In other words, remedies that are equitable in nature, may justify relief on either the equity or law sides of the court depending upon the specific relief sought. Stating this another way—an equitable remedy is a *theory* of recovery possible in either law or equity while equitable relief can be granted only by the court sitting in equity.

Since both parties seem to be arguing the jury trial issues on the basis of confusing equitable remedies with relief available only on the equity side of the court, the same is hereby scheduled for reargument on Thursday, January 22, 1987, at 2:30 p.m., with briefs to be postmarked on Thursday, January 8, 1987.

The briefs should be directed to the arguments which particularize and apply the general principles as stated in 27 Am.Jur. 2d 522, Equity § 5.

As shown in the subsequent discussion, the jurisdiction of equity is dependent upon a number of factors, including the following: (1) the matter in dispute, as being equitable in its nature; (2) the want of an adequate remedy at law; and (3) the relief involved or requested, as being equitable in character and available in equity. Most of equity's jurisdiction, however, falls generally into two categories. The one, generally exclusive, depends upon the substantive character of the right sought to be enforced; the other, generally concurrent, depends as a rule upon the inadequacy of the legal remedy. The former is predicated upon such fiduciary relationships as trusts, and other matters historically in the province of a Chancery Court. In the other class falls the case where a substantive right is merely legal, arising out of no true traditional chancery relationship, and the resort to equity is permitted only because some extraneous circumstance makes it impossible to secure adequate relief at law. Although the employment of equity's powers must be exercised within the confines of equity's jurisdiction, the power of the court of equity is generally coextensive with the rights of persons to the relief which it provides. In the final analysis, however,

whether a proper case is made for the exercise of a court's equitable powers necessarily depends upon the circumstances.

## CONCLUSION

The summary judgment motions as to Counts I and II are DENIED; as to the mental distress damages, the motion is GRANTED. As to the jury trial issue, it shall be rebriefed and reargued as stated.

IT IS SO ORDERED.

## ON MOTION FOR CLARIFICATION

Defendant has filed a "Motion for Clarification or, In the Alternative, to Strike Jury Demand or Request." The events preceding this motion are not in dispute, are quite well-known to the parties of record and are set forth adequately in plaintiffs' response to defendant's motion.[1] Defendant argues the following in support of its Motion.

## WAIVER

■ First, defendant submits that plaintiffs unequivocally waived their right to a jury trial on the § 301 and ERISA claims in the correspondence which concurred in defendant's original Motion to Strike the Jury Demand, and that this waiver of a jury trial was given effect in the Court's January 23, 1987 order. Echlin denies that plaintiffs were entitled to the unilateral option to revoke this waiver when the Court made the disclosure at the January 22, 1987 pretrial conference that recusal would be appropriate if this were to be a bench trial. Echlin further requests clarification of the June 30, 1987 order denying the defendant's request for recusal under 28 U.S.C. § 455(a) in the light of defendant's claim that plaintiffs' ERISA and § 301 claims are equitable in nature and thus not triable before a jury. Finally, if it is determined that plaintiff has either waived its right, or is not entitled to a jury trial, defendant renews its request for recusal.

Plaintiffs respond that it was a proper exercise of judicial discretion to allow Local 836 the opportunity to revoke its waiver of jury[2] since the circumstances underlying the decision to waive were changed by virtue of the Court's later decision to recuse itself in the event of a bench trial. Since until the moment that plaintiffs were given this "unilateral option," defendant wanted a jury trial, plaintiffs argue that it is inconceivable that defendant was prejudiced by this action. Finally, plaintiffs note correctly that the cases cited by defendant do not

---

1. It is indeed hard to take seriously the defendant's position because it is so obvious that it is based on considerations of strategy rather than substantive law. Defendant opposed plaintiffs' demand for a jury until the Court entered its Memorandum Opinion of December 16, 1986 denying defendant's motions for summary judgment. Having received the Court's adverse decision on its motions, defendant then withdrew its opposition to the jury apparently not wanting this Court (read that, "this judge") to hear the case non-jury. When the Court advised defendant's counsel of its prior relationship to witness Duff, it is apparent defendant now saw that the way to avoid this Court (read that, "this judge") and the law set forth in his Memorandum Opinion, would be to try the case non-jury since I had indicated I would not like to judge witness Duff's credibility.

It is often true that the principles of law that will be applied on trial are set forth in opinions and orders in responses to summary judgment and other pretrial motions. It is obvious that that is true in this case. The opinion of December 16, 1986 very clearly set forth the law that I think will govern the trial.

It is absolutely clear that defendant would prefer another chance before another judge to

determine the applicable law. Defendant seeks to avail itself of that opportunity through the manipulation of jury demands and waivers, withdrawals of jury demand and oppositions thereto.

This is just too much jockeying for the Court (read that, "me"). While defendant's counsel does an excellent job in couching defendant's arguments within the principles of plausibly applicable law, the lack of substance is obvious and properly exposed by plaintiffs' counsel. Defendant cannot make a silk purse out of a sow's ear (read that as from Shakespeare).

Incidently, plaintiffs' counsel has likewise changed positions. Nevertheless, when all of the jockeying is removed, the Court is convinced that the plaintiffs' positions are sound law and that defendant's positions are not. That conclusion is the real basis for the decision herein rather than the aversion to defendant's machinations.

2. It could also be looked at as a delayed demand or request for a jury, which traditionally has been considered as a matter addressed to judge's discretion and reversible only on the basis of an abuse thereof.

stand for the proposition that after the circumstances under which a waiver was made have changed, a court has no discretion to allow a jury trial when fairness so requires. *Cf. Cox v. C.H. Masland & Son, Inc.*, 607 F.2d 138, 144 (5th Cir.1980). Therefore, the act of allowing plaintiffs to either revoke their waiver or granting a delayed request for a jury was fair under the circumstances and will not be disturbed.[3]

### JURY TRIAL UNDER ERISA

■ Defendant further contends that a majority of cases holds that there is no right to a jury trial in ERISA actions, reasoning that the legislative history of the statute indicated that the remedies in the statute had their origin in the law of trusts and thus are equitable. *Wardle v. Central States, Southeast and Southwest Areas Pension Funds*, 627 F.2d 820 (7th Cir. 1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). Moreover, defendant claims that the mere fact that plaintiff would receive a monetary award does not convert the action into a legal one. *Calamia v. Spivery*, 632 F.Supp. 1235 (E.D.Mo.1985); *Hollenbeck v. Falstaff Brewing Corp.*, 605 F.Supp. 421 (D.C.Mo. 1984).

Plaintiffs counter by asserting that in making a determination as to whether a jury trial is appropriate, the proper inquiry is the remedy sought rather than the law or statute on which the claim is based. *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) (the Seventh Amendment jury trial preservation provision applies if the law creates *legal* rights and remedies enforceable in an action for damages). Plaintiffs state correctly that the jury trial issue must be resolved on a case-by-case basis by analyzing the rights and remedies asserted, citing *Bugher v.*

*Feightner*, 722 F.2d 1356 (7th Cir.1983). In *Bugher*, the trustees of the fund sued under ERISA for delinquent contributions allegedly due under a collective bargaining agreement. Using the *Loether* analysis, the court noted that prior to the enactment of ERISA, § 301 provided a jurisdictional basis for suits by fund trustees to collect delinquent contributions under labor contracts. Therefore, since this involved primarily contract remedies for delinquent monetary contributions, the court held that it was an action at law and the parties were entitled to a jury trial.[4] *Bugher, supra,* at 1359–60. Defendant counters this contention, citing *Gilliken v. Hughes*, 609 F.Supp. 178 (D.Del.1985), arguing that it stands for the proposition that there is no right to a jury trial in an action for enforcement of benefits which accrued under the terms of a collective bargaining agreement. The *Gilliken* court followed that reasoning, holding that the majority of jurisdictions do not allow jury trials for actions under § 502(a)(1)(B). However, in *Gilliken*, the court did not analyze the right to a jury in light of *Curtis v. Loether*, nor did it mention § 301 or the contractual remedies thereunder. Therefore, the reasoning found in *Bugher* is far more persuasive inasmuch as it examined the nature of the remedy sought, rather than merely citing cases which hold that there is no right to a jury under § 502.[5]

Plaintiffs maintain that *Bugher* is not inconsistent with most of the cases cited by defendant, noting that most of the cases cited by defendant involved actions which attacked a determination of the trustee. Hence, they were not actions for breach of a collective bargaining agreement, and indeed were of the nature that had traditionally arisen in equity where the standard by

---

3. Plaintiffs also argue that it would be a substantial burden on the members of plaintiff union to travel the extra 50 miles from Flint to Bay City for trial. That is rejected as a justification for the granting of the jury trial.

4. The *Bugher* court stated that, in enacting ERISA, Congress did not alter the rights of trustees under § 301 and evidenced no intention to eliminate the right to jury trial or to make ERISA an exclusive remedy. It should also be

noted that *Bugher* distinguished the decision in *Wardle* where the court held that review of a trustee's decision is equitable in nature since it involves merely a determination of whether the trustee acted arbitrarily.

5. Moreover, *Bugher* was consistent with *Wardle*, and it was distinguished on the basis of the remedy sought.

which the trustee's conduct was to be judged was whether the trustee's decision was arbitrary and capricious. As the court stated in *Turner v. C F & I Steel Corp.*, 770 F.2d 43 (3d Cir.1985), actions against plan trustees for pension benefits "do not involve disputed factual matters" in most cases and the issue generally is whether the trustee abused his discretion.

Here, plaintiffs are claiming that defendant breached its duty under the collective bargaining agreement as well as claiming that they are entitled to relief under ERISA. In the December 16, 1986 Memorandum Opinion and Order, the parties were cautioned against categorizing the remedy as merely "legal" or "equitable," but rather, instructed the parties to evaluate whether the jurisdiction sought to be invoked was legal or equitable. The factors used in making a determination as to equitable jurisdiction include: 1) the matter in dispute; 2) the want of an adequate remedy at law; and 3) whether the relief is available in equity and whether it is equitable in character. 27 Am.Jur.2d 522, Equity § 5. Am.Jur. goes on to characterize the two basic types of equity jurisdiction. One type of jurisdiction is exclusive and is based on the substantive character of the right to be enforced; the other type is concurrent, which generally arises when the legal remedy sought is inadequate. *Id.* The Supreme Court has elaborated on the issue:

> [T]he 'legal' nature of an issue is determined by considering, first, the pre-merger custom with reference to such questions; second, the remedy sought; and, third, the practical abilities and limitations of jurists.

*Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970). The second step of *Ross* has been deemed most significant in this Circuit. *Hildebrand v.*

*Board of Trustees*, 607 F.2d 705, 708 (6th Cir.1979), *cert. denied*, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982). In the concurrent jurisdiction class of cases, there is no traditional chancery relationship, "and the resort to equity is permitted only because some extraneous circumstance makes it impossible to secure adequate relief at law." This is the appropriate analysis here.

Obviously, there is no one type of action under ERISA, and a plaintiff, among other remedies, may seek review of a trustee's decision, restitution, removal of a trustee, or damages for breach of contract. Here, plaintiffs claim a breach of the collective bargaining agreement. The pre- and post-merger custom is to treat contract actions as legal, even though there was no "traditional action" under § 301. Further, this Circuit has held that § 301 cases are covered under the Seventh Amendment. *Wood v. International Brotherhood of Teamsters*, 807 F.2d 493 (6th Cir.1986). At issue is the obligation of defendants to provide retirement benefits to those persons who retired during the contract period between the acquisition by defendant and the plant closure. As stated in the December 16, 1986 Memorandum Opinion, the ERISA claim is merely derivative of the § 301 claim. (*See* Memorandum at 701). Therefore, it is clear that plaintiffs are seeking monetary contract damages for which an adequate remedy at law exists. Moreover, as a practical matter, the ability of a jury to hear a derivative ERISA claim would not be impeded.[6] Based on the foregoing discussion, it is concluded that plaintiffs are seeking relief from the "legal" side of the court and are entitled to a jury trial. This decision is not in conflict with the cases cited by defendant since those cases are traditionally equitable in nature.[7] *See e.g.*,

---

**6.** The Court also agrees with plaintiffs' argument based upon *Beacon Theatres v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) and *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) to the effect that even if the ERISA claim was equitable, the § 301 claim should be tried first and the result therein would be controlling as to the ERISA

claim. [Then it would always be a jury which determined witness Duff's credibility.]

**7.** In *Crews v. Central States, Southeast & Southwest Areas Pension Fund*, 788 F.2d 332 (6th Cir.1986) plaintiffs sought restitution of mistaken contributions and review of the trustee's decision denying this refund. The court found this to be equitable and denied the right to a jury trial. *Crews* was in the same line of cases

*Bugher, supra,* and *Bower v. The Bunker Hill Company,* 114 F.R.D. 587 (E.D.Wash. 1986) (attached to plaintiffs' Brief). Therefore, defendant's Motion to Strike will be DENIED, and there will be a jury trial on all issues.

CERTIFICATION

■ In the event its Motion is denied, defendant requests that the following issues be certified for immediate appeal pursuant to 28 U.S.C. § 1292(b);

1) Whether the Court must recuse itself from further participation in this civil action due to the fact there is reasonable doubt as to the appearance of impartiality of the Court;

2) Whether the plaintiffs have waived their right to trial by jury in this civil action; and

3) Whether there exists a right to trial by jury of a claim brought pursuant to § 502(a)(1)(B) of ERISA; and

4) Whether in any case it was an abuse of discretion for the Court to grant plaintiffs the complete option of selecting either trial by jury or the court without regard to Echlin's position on that issue.

The statute provides in pertinent part:

(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Certification under Section 1292(b) is intended only for exceptional cases where an intermediate appeal may avoid protracted and expensive litigation. It does not authorize piecemeal appeals. *Kraus v. Board of Road Commissioners,* 364 F.2d 919 (6th Cir.1966); *Kennard v. United Parcel Ser-*

*vice, Inc.,* 531 F.Supp. 1139 (E.D.Mich. 1982).

Section 1292(b) has been deemed inappropriate when the parties have completed discovery, are ready for trial, and where the case could be tried before the interlocutory appeal process could take place. *Kennard v. United Parcel Service, Inc., supra.*

Here, discovery has been closed for months. Jury selection is scheduled for September 25, 1987. The trial will take place shortly thereafter. This action probably will be tried before the Sixth Circuit could review the matters that defendant seeks to have certified. An interlocutory appeal at this stage of the litigation would certainly delay rather than advance the ultimate termination of this litigation.

In determining whether to certify an issue for appeal under Section 1292(b) a court must assess the probability that its decision is in error. Here, there is only one real issue not committed to the Court's discretion—whether plaintiffs are entitled to a jury trial in the ERISA claim. Even if there is found to be no right to a jury trial on the ERISA claim, plaintiffs clearly have a right to an initial jury determination of the underlying dispositive factual issue in their Section 301 action.[8] A determination in the § 301 claim is dispositive of the ERISA claim. Thus, no harm can come to defendants even if the appellate court were to hold that there is no right to a jury trial on the ERISA claim. Therefore, certification is DENIED.

For the foregoing reasons, IT IS ORDERED that defendant's Motion to Strike is DENIED, and certification for an appeal pursuant to 28 U.S.C. § 1292(b) is also DENIED.

as *Wardle* and this writer does not see this case as inconsistent with *Crews. See, e.g., Hayther v. ABS Industries, Inc.,* 7 E.B.C. 2158 (N.D.Ohio 1986) (distinguishes *Crews* in a § 301 action for breach of the collective bargaining agreement.)

**8.** *See* footnote 6.